SOCIEDAD DE GANANCIALES IVÁN NEGRONI y OTRA, demandantes recurridos, v. SECRETARIO DE JUSTICIA y OTROS, demandados y recurentes, y ESTADO LIBRE ASOCIADO DE PUERTO RICO, interventor y recurrente.

*Números:* RE-89-388          *Resueltos:* 19 de septiembre de 1994
RE-89-401

*Jorge E. Pérez Díaz, Procurador General, Vannessa Ramírez, Procuradora General Auxiliar, y Julio Cesar Colón Ortiz,* abogados de la parte recurrente; *Arcadio Toro Goyco y Dizzy Murphy*, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

"Las especies silvestres no observan las leyes de los hombres ni respetan sus fronteras. ... Las amenazas que se ciernen sobre los recursos naturales como resultado de actividades realizadas en terrenos adyacentes, sean públicos o privados, alcanzan a todas las especies silvestres en general. Tales amenazas se agrupan en dos categorías principales: matanza directa y destrucción del hábitat. De estos dos problemas, el *segundo es el más grave.*" (Traducción y énfasis suplidos.) Coggins, *Protecting the Wildlife*

*Resources of National Parks From External Threats*, 22 Land & Water L. Rev. 1 (1987).

Esta visión ecológica cobra relieve en la controversia que tienen la Autoridad de Tierras (en adelante Autoridad) y los esposos Iván Negroni y Lavinia Carlo Aymat en torno a la titularidad de 9.1365 cuerdas, debido a una discrepancia de colindancia. Los terrenos forman parte del Bosque Seco de Guánica, una de nuestras reservas forestales más importantes creada por Proclama Gubernamental en 1919, designada reserva natural por la Junta de Planificación. Su valor ecológico y científico motivaron que la Organización de Naciones Unidas lo clasificara, luego de El Yunque, como la segunda Reserva Biosférica Internacional en Puerto Rico. Considerado el Bosque Subtropical mejor preservado y menos alterado por el hombre, sirve de albergue a una gran diversidad de organismos y especímenes únicos en esa zona.

Simultáneamente, evaluamos el reclamo de una servidumbre de paso a favor de los Negroni-Carlo a través de ese bosque.

I

El trasfondo fáctico se remonta a 1924, cuando la propiedad que hoy pertenece a los Negroni-Carlo correspondía a Valentín Paoli Antonmatei. Éste levantó un plano que hacía constar una cabida de 243.639 cuerdas, colindando por el oeste, sur y este con terrenos de la Central Guánica.[1] En 1941 los terrenos de la Central Guánica —correspondientes al Bosque Seco de Guánica— fueron expropiados y advinieron patrimonio de la Autoridad. Posteriormente, la finca de Paoli Antonmatei fue adquirida por Juan Ángel Tió, quien a su vez la vendió a Gregorio García el 17 de diciembre de 1947. En 1948 la Autoridad

---

[1] Este plano se unió a la Escritura Núm. 81 de 17 de marzo de 1925, otorgada ante el notario Eusebio López Acosta, y quedó inscrito en el Registro de la Propiedad.

levantó un plano de mensura de su propiedad que consigna una cerca como colindancia con la finca aledaña de García.

Así las cosas, mediante la Escritura Núm. 6 otorgada ante el notario Carlos García Méndez el 26 de enero de 1952, los Negroni-Carlo compraron la finca de García. Se hizo constar una cabida de 243.639 cuerdas "por el precio ajustado y convenido de $4,000.", y se describió así:

RUSTICA: Predio de terreno *dedicado a pasto*, sito en el barrio Guánica, lugar denominado "Salinas del Pastillo", del término municipal de Guánica, de una cabida de DOSCIENTAS CUARENTA Y TRES CUERDAS CON SEISCIENTAS TREINTA Y NUEVE MILESIMAS de otra, equivalentes a noventa y cinco hectáreas y setenta y seis áreas. Colinda por el NORTE, con terrenos de Gabino Rodríguez Matos antes, hoy de don Juan Angel Tió; por el SUR con los de Guánica Centrale antes, hoy Departamento Forestal de Puerto Rico; por el OESTE, con otros terrenos de Guánica Centrale antes, hoy Departamento Forestal de Puerto Rico, y los de la sucesión de Luis A. Dastas, y al ESTE con más terrenos de Guánica Centrale antes, hoy Departamento Forestal de Puerto Rico. (Énfasis suplido.) Moción solicitando permiso para entrar a finca, *Exhibit* G, págs. 11–12.

En cuanto al acceso a la finca expresaron:

QUINTO: Se hace constar que la finca objeto de la venta que informa la presente escritura tiene su entrada por la parte SUR, *por un camino a través de una finca propiedad hoy del Departamento Forestal de Puerto Rico y que ha sido utilizado a tal objeto desde tiempo inmemorial, y de cuyo hecho tiene conocimiento personal la compradora y su esposo.* Y se conviene expresamente que la compradora y su esposo señor Negroni relevan expresamente al vendedor señor García, de toda ulterior responsabilidad en relación con la entrada de dicha finca, siendo entendido expresamente que en el futuro y si ello fuere necesario, la compradora y su esposo señor Negroni se entenderán directamente con los dueños de la finca a través de la cual pasa el camino que da acceso a la finca objeto del presente contrato. (Énfasis suplido.) Moción solicitando permiso para entrar a finca, *Exhibit* G, pág. 13.

La finca continuó siendo utilizada para la crianza y pastoreo de ganado. En 1985, con el propósito de lotificarla

para urbanizarla, los Negroni-Carlo contrataron los servicios del agrimensor Oscar Troche para que confeccionara un plano de mensura. A base de la cabida del plano preparado en 1924, *sin citar a los colindantes*, determinó una disminución de aproximadamente 9.1365 cuerdas,[2] y explicó que la diferencia era en la colindancia sur *con el Bosque Seco de Guánica.*

Los Negroni-Carlo, sin instar una acción de deslinde, derrumbaron la cerca y desmontaron la vegetación del bosque para colocar la colindancia donde, según ellos, correspondía. Al percatarse de esto, el Departamento de Recursos Naturales erigió otra cerca donde estaba la anterior y puso un portón que impidió el acceso a los Negroni-Carlo por la entrada sur.

El 18 de marzo de 1986 los Negroni-Carlo solicitaron del Tribunal Superior, Sala de Ponce, un *injunction* para remover la cerca y lograr acceso. Oportunamente, se celebró una inspección ocular.[3] El 5 de diciembre los Negroni-Carlo desistieron del *injunction* y el caso continuó como una acción ordinaria de reivindicación y daños. Presentada la prueba,[4] dicho foro (Hon. Luis Pieraldi Cappa, Juez) declaró con lugar la demanda. Ordenó a la Autoridad en-

---

[2] Originalmente, la deficiencia alegada era de 2.0 cuerdas; luego se aumentó a 9.1365 cuerdas.

[3] En lo pertinente, el Acta de Inspección Ocular de 2 de mayo de 1986, pág. 2, consignó:

"Las partes hacen constar que está en controversia la cerca. Que se observa un punto clavado en el terreno de varilla de construcción de acero pintado de anaranjado y está de sesenta a setenta metros de la colindancia real.

"La parte demandada llama la atención en cuanto al hecho de que hay un alambre de púa que está unido o metido al tronco de un árbol de úcar [sic], que de acuerdo a su condición refleja que está ahí hace mucho tiempo; que es bastante antiguo.

"Se pudo observar un control que se llama 'tio', que es una vara en el terreno que se usa como punto de referencia para hacer las mensuras. El punto ese lo puso supuestamente la Autoridad de Tierras en el 1948.

"Hay otro punto a 427 metros de la misma manera que el otro, que es un pedazo de varilla de construcción pintado en el terreno de color anaranjado."

[4] El Estado presentó como testigos peritos a Miguel Canals, Director Interino de la División de Manejo de Bosques y Director del Bosque Seco de Guánica, al guardabosque Baudilio Hernández Sanabria y al Agrimensor Hernán Lugo. Por los esposos Negroni-Carlo sirvió de perito el agrimensor Troche.

tregar la propiedad[5] y la condenó a satisfacer quince mil dólares ($15,000) por daños y perjuicios, más diez mil dólares ($10,000) por los sufrimientos y angustias al verse despojados de su propiedad. En cuanto a la servidumbre de paso, reconoció la existencia de un camino por la finca de la Autoridad, el cual fue tapado con alambre eslabonado, y un portón que permaneció cerrado desde que los Negroni-Carlo desmontaron los árboles para la lotificación del terreno que entendían les pertenecía. Concluyó que los Negroni-Carlo no habían adquirido la servidumbre al no establecerse en una escritura pública, pero la reconoció, previo el pago de una justa indemnización, al quedar la finca enclavada cuando se les impidió el acceso.

A solicitud de la Autoridad y el interventor Estado Libre Asociado, revisamos.

## II

De entrada, es obvio que el contrato celebrado por los Negroni-Carlo y Gregorio García en 1952 fue una venta por *precio alzado*. Así se desprende claramente de la escritura de compraventa, donde hicieron constar que la finca de 243.639 cuerdas de terreno se vendió "por el precio ajustado y convenido de $4,000". Nada expresaron sobre si algo correspondía por unidad de medida. En la venta por precio alzado, el vendedor tiene que "entregar la cosa cierta que es la finca individualizada mediante la descripción de sus linderos. Todo lo que éstos comprendan ha de ser entregado a cambio del precio convenido". J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 169. El fundamento son los linderos, no un tanto por unidad de medida. Cualquier di-

---

[5] En síntesis, adjudicó la titularidad a los Negroni-Carlo por entender que el Estado no demostró que el método de mensura utilizado en 1924 —ángulos con referencia a Norte magnético— era menos preciso al que se usó en 1948 por la Autoridad de Tierras (en adelante la Autoridad)(coordinadas Lambert). El contenido del plano de 1924 le mereció entero crédito y lo usó para la adjudicación del terreno.

ferencia entre la cabida expresada y la que efectivamente tiene la finca, *no da margen a reclamación o indemnización. Ruidíaz Barrios v. Salas*, 103 D.P.R. 922, 926 (1975). "La expresión de la cabida, se dice, nada significa; se vende por los linderos y por un precio global; no son tantas o cuantas las unidades de medida que se transmiten; es un blok y por un solo precio infraccionable e indivisible. Haya más o haya menos superficie dentro de los lindes de la que se expresó en el contrato, no importa; la gana o la pierde el comprador o el vendedor, según el caso; porque lo pudo averiguar; porque fue negligente; porque se presume que quiso vender todo lo comprendido en los linderos, y al aceptar un precio alzado quedó expresado su consentimiento y perfecto el contrato." Q.M. Scaevola, *Código Civil*, 2da ed. rev., Madrid, Ed. Reus, 1970, T. XXIII, Vol. 2, págs. 84–85.

▇ Únicamente cuando el vendedor no pueda entregar todo lo que abarquen sus linderos es que el comprador puede rescindir el contrato o pedir una disminución en el precio. Art. 1360 del Código Civil, 31 L.P.R.A. sec. 3820.

Según expuesto, la venta a precio alzado realizada en 1952 entre Gregorio García y los Negroni-Carlo originó este pleito. La acción de los Negroni-Carlo se ampara en la mensura de la finca hecha en 1924. Adviértase que, al ellos comprar en 1952, ya existía la cerca que establecía la colindancia con la Autoridad.[6] Como García les entregó la totalidad del terreno incluido dentro de los lindes señalados en la compraventa a precio alzado, ellos *carecían de reclamación en su contra por la diferencia en cabida*. Como corolario, no podían pretender variar la cabida visualizada en el contrato de compraventa de 1952, moviendo la colindancia de la finca de la Autoridad para alcanzar la del plano de 1924. En las circunstancias peculiares ante nos,

---

[6] El plano levantado por la Autoridad en 1948 señala la cerca como punto de referencia. A juicio nuestro, las fotografías y los demás planos ratifican la existencia de la colindancia conforme ese plano.

permitirlo sería circunvalar la ley; en ausencia de una acción contra el vendedor, estaríamos avalando un remedio inexistente contra los colindantes.

*Repetimos, la controversia no es que la Autoridad movió la cerca en colindancia con los Negroni-Carlo*; la prueba fehacientemente demuestra que desde 1948 se encontraba eregida en el lugar donde precisamente la reconstruyó al éstos demolerla. *La acción de los Negroni-Carlo se fundamenta en la discrepancia en cabida entre la declarada en el plano levantado en 1924 y la mensura que "ex parte" realizaron con el agrimensor Troche en 1985.*

### III

Aún así, los Negroni-Carlo apoyan su titularidad a base de que desde 1924 el título y el plano que reconocen la cabida de 243.639 cuerdas están inscritos en el Registro de la Propiedad. Aducen que ello demuestra que por espacio de sesenta (60) años —sumado el término de sus predecesores en título— han poseído el terreno en disputa en calidad de dueños. Entienden consumada a su favor la usucapión *secundum tabula*.([7]) No tienen razón.

El Registro de la Propiedad no garantiza cabida excepto cuando sea aplicable la Ley de la Propiedad Horizontal, pues no da fe de las características físicas de los inmuebles. *García Larrinua v. Lichtig*, 118 D.P.R. 120, 133 (1986).

La existencia de la cerca que establece la colindancia entre ambas propiedades desde 1948 es evidente. Contrario a la contención de los Negroni-Carlo, si el problema se debió al lugar donde la Autoridad la ubicó originalmente,

---

([7]) Por resultar innecesario, no entramos a considerar si el Bosque Seco de Guánica es un terreno baldío susceptible de prescripción adquisitiva. Para la definición de "terreno baldío", véase *Ayala v. Aut. de Tierras de P.R.*, 116 D.P.R. 337, 343 (1985).

*tendríamos que concluir que la usucapión quedó consumada a favor de esta entidad.*

Rechazamos la proposición de que no fue hasta 1983 que se levantó la cerca en disputa. *Primero,* los planos y la fotografías en evidencia establecen la colindancia donde se encuentra actualmente y, *segundo,* cabe notar que la finca de los Negroni-Carlo era dedicada al pastoreo y a la crianza de ganado. Resulta inverosímil creer que no existiese la cerca, a modo de barrera, separando ambas propiedades. De un lado, el bosque hubiese estado amenazado diariamente por el paso del ganado con el consabido daño a su vegetación; del otro, difícilmente, por no decir imposible, los Negroni-Carlo pudieron haber mantenido un adecuado control de su ganado susceptible de escapar y extraviarse en el bosque.

En conclusión, incidió el ilustrado tribunal de instancia al adjudicar la titularidad de las 9.1365 cuerdas en disputa a los Negroni-Carlo.

## IV

Réstanos examinar el decreto de servidumbre de paso a través del Bosque Seco de Guánica.

Es norma establecida que la servidumbre de paso, al ser discontínua, no es susceptible de adquirirse mediante prescripción; sólo en virtud de título. La única excepción es la servidumbre de signo aparente. *Díaz v. Con. Tit. Cond. El Monte N. Garden,* 132 D.P.R. 452 (1993); *Ibáñez v. Tribunal Superior,* 102 D.P.R. 615, 626 (1974). No estamos ante esta excepción, al menos respecto a la Autoridad, por lo que en ausencia de título no quedó constituida una servidumbre de paso a favor de los Negroni-Carlo.

Ahora bien, la realidad es que al cerrarse el acceso por el bosque, la finca de los Negroni-Carlo quedó enclavada. El ilustrado tribunal de instancia concluyó que ese acceso

era el más apropiado debido a su proximidad a la vía pública.

█ El propietario de una finca enclavada entre otras ajenas y sin salida a camino público tiene derecho a exigir paso por las heredades vecinas, previa la correspondiente indemnización. Art. 500 del Código Civil, 31 L.P.R.A. sec. 1731. Este acceso debe ser razonable para que le permita entrar y salir del fundo al sistema general de vías públicas, y no a una carretera específica. *E.L.A. v. Rodríguez*, 103 D.P.R. 636, 641 (1975). El paso debe darse por el punto *menos perjudicial* al predio sirviente y, si posible, donde menor sea la distancia del predio dominante al camino público. Art. 501 del Código Civil, 31 L.P.R.A. sec. 1732.

A estos efectos, Manresa señala que es necesario establecer el paso

> ...por donde sea más breve y por donde cause menos daño. El ideal, en el establecimiento de esta servidumbre, está pues, en la mayor brevedad y en el daño mínimo. Pero la dificultad está en que esas dos condiciones no siempre concurren paralelamente: la mayor brevedad puede ocasionar un daño mayor. En este caso, el Código impone la solución: *el paso deberá establecerse supeditando lo de la brevedad al menor daño.* El esquema de la servidumbre de paso debe ser una recta —distancia más corta— entre el camino público y el predio dominante, modificada y adaptada por las exigencias del menor daño posible. Naturalmente, *corresponde al dueño del predio sirviente oponerse*, bien sea al establecimiento de la servidumbre en su fundo, si puede alegar que es menos perjudicial que en el suyo, en otro, o siendo igualmente gravosa, si es por el otro más corto, bien sea al trazado que el del dominante pida .... [L]a servidumbre establecida según el criterio del menor daño, beneficia indirectamente al dueño del dominante, toda vez que cuanto menor es el daño, más corta debe ser la indemnización. (Énfasis en el original suprimido y énfasis suplido.) I.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 7ma ed. rev., Madrid, Ed. Reus, 1972, T. IV, págs. 904–905.

Siguiendo estos criterios, la determinación de dónde debe trazarse el acceso en el caso de autos nos obliga a resaltar que potencialmente el predio sirviente puede ser

el Bosque Seco de Guánica. El pretendido desarrollo para urbanizar conlleva la construcción de una vía asfaltada por donde discurrirán, originalmente, equipo pesado de construcción y, eventualmente, los compradores de las casas allí construidas. Por ende, las consideraciones en cuanto al menor daño requieren suma cautela dado su valor e importancia ecológica, ambiental y científica. Como dijimos, éste es considerado el mejor bosque seco subtropical a nivel mundial; fue designado reserva biosférica internacional por la Organización de Naciones Unidas dada la cantidad de especies endémicas que forman parte de su hábitat.

En términos de remedios judiciales, existen varias alternativas que harían viable el acceso a los predios de los Negroni-Carlo sin generar mayor detrimento al ya sufrido por el bosque. De la prueba surge la existencia de un acceso por la finca al norte de la de los Negroni-Carlo, identificada como perteneciente a Juan Ángel Tió. Ni Tió ni su posterior adquirente fueron incluidos en el presente caso. Incluso, el Estado propone que el paso se conceda por otro sector al oeste de su propiedad para evitar la ulterior inflicción de daños al bosque. Cualquiera que sea el remedio, no podemos permitir que el paso del hombre a través de las veredas de la muchas veces indefensa y olvidada Madre Naturaleza continúe desafiando la estabilidad de nuestro ecosistema. Estamos ante un patrimonio público de valor inconmensurable en términos de posibles daños, de difícil y compleja cuantificación.

Por los fundamentos expuestos, *se dictará sentencia que revoque declare sin lugar la demanda de reivindicación y se devuelvan los autos originales, con el mandato de que se incluyan como partes los demás colindantes, para que, previa vista evidenciaria, valorativa y fijación de indemnización, se establezca el lugar por donde procede la servidumbre de paso de los Negroni-Carlo conforme nuestros pronunciamientos y el criterio del menor daño.*

El Juez Asociado Señor Hernández Denton emitió una

opinión de conformidad, a la cual se unió el Juez Asociado Señor Alonso Alonso. El Juez Presidente Señor Andréu García y el Juez Asociado Señor Rebollo López no intervinieron.

— O —

Opinión de conformidad del Juez Asociado Señor Hernández Denton, a la cual se unió el Juez Asociado Señor Alonso Alonso.

Por considerar que el impacto ecológico es uno de los factores más importantes a considerar al determinar el lugar de acceso a una finca enclavada, suscribimos la opinión del Tribunal. La importancia del mencionado factor aumenta en proporción a la importancia ecológica de los terrenos en controversia e incluso podría sobrepasar consideraciones de índole económica. En vista de lo anterior, es preciso evaluar controversias como la del caso ante nos con especial sensibilidad hacia el delicado balance de la naturaleza que nos rodea y su innegable valor para la vida humana.

En el presente caso, la importancia del factor ecológico es de inigualable magnitud. El Bosque Seco de Guánica es uno de los recursos naturales más importantes de nuestro país, pues está integrado por especies típicas de bosque subtropical, en avanzado estado sucesional. De los autos surge que aproximadamente setecientas cincuenta (750) especies de plantas componen el bosque, incluyendo árboles de mabí, almácigo, guayacán, uvilla, tintillo, húcar, tachuelo y serrasuela. Cerca de cuarenta (40) de estas especies están en peligro de extinción. Además, el Bosque Seco de Guánica reúne igualmente a ciento veinticinco (125) especies de aves, entre ellas, el guabairo pequeño de Puerto Rico, la mariquita, el come ñame, el lagarto de rabo azul y las reinitas trepadora y mariposera.

Considerado Reserva Internacional de la Biosfera, el

Bosque Seco de Guánica es el representante mundial de los bosques secos subtropicales. Los estudios realizados en el mencionado bosque permiten que el hombre aprenda sobre la interacción entre la flora y la fauna, y sobre la regeneración de las especies. Esto permite la rehabilitación de áreas de bosque seco subtropical que han sido seriamente alteradas por la mano del hombre en otros países. De esta forma, el bosque no sólo es un patrimonio puertorriqueño; es un patrimonio de la humanidad.

Conociendo la importancia ecológica de los terrenos en controversia, resulta incomprensible la acción tomada por los demandantes. El desmonte realizado por los esposos Negroni-Carlo destruyó el cincuenta por ciento de las casi diez (10) cuerdas que reclamaban como suyas. Además de destruir los valiosos árboles y plantas que allí vivían, esta arbitraria e irreflexiva acción provocó la erosión del suelo. Esta situación retrasa el restablecimiento del bosque a su estado natural de bosque maduro y permite la invasión de especies exóticas o de sucesión secundaria. El daño causado podría, muy bien, ser irreparable.

Las consecuencias del desmonte cobran mayor importancia si se considera el hecho de que el tipo de vegetación que se encuentra en el Bosque Seco de Guánica es la más amenazada a nivel mundial. Su destrucción ha sido más intensa y rápida que la de la vegetación típica de los bosques lluviosos o húmedos, tales como los bosques de la cuenca del río Amazonas.

Es irónico pensar que siendo el hombre el más beneficiado por las bendiciones de la naturaleza, sea éste su mayor destructor. Recae en el ser humano la responsabilidad de desarrollar una mejor conciencia de las consecuencias de sus actuaciones sobre la ecología y de protegerla contra aquellos que sin conciencia alguna aniquilan nuestros recursos. Se hace patente la necesidad de ofrecer más y mejores recursos al servicio de conservación y vigilancia de

bosques del Departamento de Recursos Naturales para fortalecer la efectividad de su función, indispensable para nuestro país y nuestro planeta.