# 2006 DTA 59

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE FAJARDO
PANEL XI**

DEV, S.E.
Demandante-Apelada

v.

DESARROLLADORA PUNTA CARENERO, SOCIEDAD EN COMANDITA, S.E.,
DESARROLLADORA PUNTA CARENERO, INC.
Demandadas-Apelantes

Núm. KLAN-04-00337

San Juan, Puerto Rico, a 14 de marzo de 2006

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Feliciano Acevedo y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 31 de marzo de 2004, Desarrolladora Punta Carenero, Sociedad en Comandita, S.E., Desarrolladora Punta Carenero, Inc. en adelante, (*"Carenero"* o *"apelante"*) presentó, *"Petición de Apelación" en la que solicita la revisión de la Sentencia Parcial emitida el día 2, notificada el 5 de mayo de 2004, por el Tribunal de Primera Instancia, Sala Superior de Fajardo"*, (*"T.P.I."* o, *"Instancia"*), Hon. Juez Ismael Colón Pérez.

La referida sentencia declaró con Lugar la demanda instada por Dev., S.E., (*"DEV"*) en contra de Carenero. En síntesis, la referida sentencia le prohíbe a Carenero la utilización de una porción de ciertos predios de terreno propiedad de DEV en la isla municipio de Culebra, en donde, Carenero construyó y asfaltó un camino para pasar por los predios de la segunda, para accesar a una vía municipal. El dictamen del T.P.I. ordena a Carenero a restituir los terrenos de las parcelas de DEV a su estado original y abstenerse permanentemente de intervenir en los mencionados predios, *"excepto cuando se trate del ejercicio de los actos propios de la servidumbre reconocida en la sentencia parcial emitida, servidumbre previamente establecida."* El T.P.I. dispuso que se continuarían los procedimientos en torno a la reclamación de daños por parte de DEV a Carenero. Sentencia del T.P.I., apéndice, (ap.) páginas 67 a 89, que consideramos una bien fundamentada y estructurada.

Inconforme con el resultado, Carenero señala en su recurso apelativo que el T.P.I. erró al: (1) dejar enclavado el proyecto turístico que construyó en sus predios, que entendemos aunque no se precisa, se trata de un complejo de sobre (160) unidades de un condo hotel. De autos, no podemos precisar de qué trata el Proyecto, su entorno y densidad económica y turística. Aduce Carenero que el T.P.I. erró aun cuando la prueba pericial desfilada demostró que su único acceso fue pavimentado de acuerdo a cierto plano y escritura en controversia; (2) variar las dimensiones de una servidumbre debidamente constituida amparándose en comentarios carentes de precisión matemática; (3) al ordenar la demolición del único acceso a un proyecto hotelero, ordenando el paso por un camino inexistente imposible de replantear que ubica en una zona de mangle cubierta de vegetación que no cumple con los requisitos de acceso establecidos en los reglamentos vigentes; (4) al dictar sentencia contra una parte que no es titular del predio en controversia, a pesar de haber sido debidamente informado de la transferencia en el título de propiedad y de la identidad del nuevo dueño, circunstancia que a su juicio, tornó la

sentencia dictada en ineficaz; (5) al no desestimar la demanda por no haberse acumulado como parte a todos los titulares de los predios con derecho al paso por la servidumbre que el foro apelado declaró extinguida por prescripción, siendo aquéllos, partes indispensable en el litigio al verse afectados en el acceso a sus respectivos predios; ■ (6) al dictar una sentencia contraria a sus propias determinaciones de hechos y conclusiones de derecho, y (7) al negarse a tomar conocimiento judicial de una sentencia previa en la que el mismo magistrado adjudicó similar controversia, dando validez al contenido del mismo plano de segregación que en la presente causa rechaza.

Los tres primeros errores señalados y los últimos dos ameritan que se discutan solidariamente, mereciendo los errores cuatro y cinco atención por separado.

## I

Como antesala procesal a la causa que ahora examinamos, debemos señalar que presentada la Petición de Apelación por Carenero, este foro optó por acoger su recurso como uno de *Certiorari* y no como uno de apelación. Así lo notificamos en Resolución con fecha de 10 de mayo de 2004, en la que indicamos que aunque los apelantes le daban trato de sentencia parcial al dictamen del T.P.I., aquél más bien era una resolución interlocutoria que fijaba responsabilidad, mas no daños. Este foro razonó que en vista de que el T.P.I. había señalado una vista ulterior para fijar la cuantía de daños, debía entenderse que no se había resuelto la totalidad de la controversia, y que por tanto, la determinación no podía considerársele final, denegando así la expedición del auto.

Luego de varios trámites procesales, los apelantes acudieron ante el Tribunal Supremo solicitando la revisión de nuestra determinación. Mediante Sentencia emitida el 4 de abril, notificada el 3 de agosto de 12005, el más alto Tribunal revocó la determinación de este Foro, indicando que la determinación del T.P.I. cuya revisión solicitaron los aquí apelantes trataba en efecto de una sentencia parcial final, por lo que el recurso debió haberse acogido como una apelación y debió atenderse en sus méritos, devolviendo la causa para nuestra consideración de los señalamientos allí realizados, lo que de inmediato procedimos a cumplir la encomienda.

El 31 de agosto de 2005, ordenamos la reapertura del recurso; advertimos que tratándose de una apelación quedaban paralizados todos los procedimientos relacionados con la Sentencia Parcial apelada hasta tanto dispusiéramos finalmente del recurso. Instruimos a las partes que presentaran una transcripción estipulada de la prueba y declaramos Con Lugar la solicitud que hiciera Carenero para que se elevaran del expediente de Instancia, "*los planos y otros documentos de difícil reproducción que fueron admitidos en evidencia*" a los cuales le hemos ofrecido cuidadosa atención luego de desplegar los mismos.

El 25 de octubre de 2005 apercibimos a DEV de que para la mencionada fecha no se había recibido su alegato, concediéndole para ello diez días adicionales y término de veinte días a ambas partes para que presentaran alegatos suplementarios sobre la transcripción estipulada, señalando específicamente las páginas alusivas sobre lo que tuvieran a bien argumentar.

En la consideración de este caso, diligentemente litigado por ambas partes, tenemos el beneficio de los numerosos exhibits presentados por las partes, la Petición de Apelación presentada el 31 de marzo de 2004, el Alegato de 15 de noviembre de 2005 de DEV, la Oposición al primero presentado el 22 de noviembre por Carenero, el Alegato Suplementario de Carenero de 2 de diciembre de 2005, la Réplica a Oposición a Alegato de 20 de enero de 2006 de DEV, Alegato Suplementario de DEV, y Dúplica a Réplica de Carenero, ambos presentadas el 30 de enero de 2006. Con el beneficio de los escritos señalados y los dos tomos de la transcripción estipulada de los procedimientos que constan de (470) folios, estamos en posición de resolver, lo que procedemos a realizar confirmando la Sentencia Parcial emitida por el T.P.I. Exponemos al respecto.

## II

La controversia medular que hoy tenemos ante nuestra consideración y sobre la cual ambas partes sustancialmente coinciden, se reduce a determinar si a la servidumbre constituida en el año 1974 se le asignó una localización a lo largo del camino existente cerca del Mar Caribe como alega DEV, S.E. o si, por el contrario, discurre por el lugar en que se trazó y asfaltó por Desarrolladora Punta Carenero y otros. Ambas partes presentaron prueba pericial de primer orden según se refleja en sus respectivos resumés.

Las determinaciones de hechos que consideramos circunscriben la situación entre las partes y que fueron adoptadas por el foro recurrido están avaladas por los numerosos exhibits y los testimonios que hemos examinado.

Mediante la Escritura de Agrupación Núm. 284 de 10 de agosto de 1972, otorgada ante el Notario Público Faustino R. Aponte, fue creada la finca Núm. 390, sita en el Municipio de Culebra. En la referida Escritura Núm. 284, se segregó una parcela de unas cinco cuerdas, y además, se constituyó una servidumbre de paso a favor de la misma. Se expresó sobre la servidumbre, que la misma estaría:

*"[c]comenzando en la finca de los señores ANDERSON, RODRÍGUEZ y FONTANET en dirección NORTE hasta conectar con la carretera que conduce al pueblo DEWEY, cuya servidumbre contendrá diez metros de ancho y todo el largo que sea necesario hasta la carretera. Aclaran las partes que hay un camino marcado que conduce de la finca segregada por el lado de los manglares hasta conectar con la carretera mencionada y la servidumbre deberá seguir ese rumbo y por donde menos daños pueda causar al pedio sirviente."* (Cláusula Sexta, página 8 de la escritura Núm. 284).

Dos años más tarde de otorgada la referida Escritura Núm. 284, mediante la escritura Núm. 23 de 24 de octubre de 1974, apéndice pág. 78, otorgada ante Notario Público Guillermo Cintrón Ayuso, la antes descrita finca Núm. 390 fue segregada en (27) parcelas. En torno a las parcelas 9 y 10, que resultan cruciales en la controversia, se gravaron las mismas en la referida escritura con servidumbre de paso, que se describe como sigue:

*"Los comparecientes desean constituir y por este acto constituyendo una servidumbre de paso sobre la parcela anteriormente descrita, a favor de todas las demás parcelas segregadas y descritas en esta escritura, la cual servidumbre de paso se describe de la siguiente manera:*

***Situada siguiendo una alineación sobre el trazado del acceso vecinal existente o variante cercana a lo largo y en la inmediación del litoral marítimo del Mar Caribe y Bahía Honda,*** *parte de la colindancia SUR común a la parcela número ocho atraviesa esta parcela en la longitud de ochenta y dos metros lineales con veintisiete centésimas de otro (82.27) y un ancho de **trece metros (13.00)** hasta la colindancia NORTE común a la parcela número diez; por su colindancia ESTE colinda además con la parcela número quince en una longitud de seis metros lineales con cincuenta centésimas (6.50) de otro desde el centro del camino."*

La anterior descripción corresponde a la servidumbre con la que se gravó la finca o parcela número 9. La descripción de la finca número 10 repitió el texto en lo que estaba (o estaría) situada la servidumbre de paso siguiendo una alineación sobre el trazado del acceso vecinal existente o variante cercana a lo largo y en la inmediación del litoral marítimo del Mar Caribe y Bahía Honda. Igualmente, se reiteró que su ancho sería de trece metros. Las demás dimensiones y colindancias variaron. De la Escritura Núm. 23 se trasluce que, de hecho, salvo por la descripción que se hace de la constitución de la servidumbre de paso a través de las fincas 13 a 22, respecto al resto de las 27 fincas segregadas incluyendo como antes expresado, las fincas 9 y 10, en el referido instrumento público se asigna como ubicación y rumbo a la servidumbre del trazado por el aludido *"acceso vecinal existente"*, el cual, según determinó el T.P.I., se hizo patente del procedimiento, que el mismo existió desde antes del año 1964, véase Exhibit 6-A de DEV por estipulación.

La parte final de la Escritura Núm. 23 destaca que las parcelas descritas en la misma habían sido segregadas, *"de acuerdo con el plano confeccionado por el Ingeniero Rafael González Gómez, de fecha 1 de octubre de 1974, en cuyo plano constan las servidumbres de paso que tienen anchos máximos de trece metros y longitudes, según constan a lo largo de las colindancias comunes y contornos en las respectivas parcelas indicadas y descritas en dicho plano como "caminos""*. Se añadió que todas las parcelas segregadas estaban, *"sujetas y gravadas por las respectivas servidumbres de paso, en lo largo, ancho y localización que aparecen en los planos y de la escritura, establecidas para darle salida a dichas parcelas, así como para permitir construir, ordenadamente, cualesquiera facilidades necesarias en proyectos futuros aprobados por las agencias del gobierno. Cada una de estas parcelas queda gravada y afecta a las servidumbres de paso correspondientes antes referidas en las áreas descritas"*.

Por otro lado, aunque la Escritura núm. 23 fue debidamente inscrita en el Registro de la Propiedad, el plano de segregación al que hace referencia la misma, en donde quedarían ilustradas las fincas segregadas y las servidumbres de paso, no fue presentado para inscripción y no aparece archivado en el Registro de la Propiedad.

Posteriormente, DEV, mediante la Escritura de Compraventa y de Hipoteca Núm. 68 de 22 de agosto de 1990 y la Escritura de Compraventa y Reconocimiento de Hipoteca Núm. 29 de 5 de junio de 1990, ambas otorgadas ante el Notario Público Víctor Burgos Díaz, adquirió las parcelas 9 y 10 antes descritas. En el acto de la adquisición, DEV no recibió conjuntamente con las escrituras, copia del plano de segregación preparado por el Ingeniero Rafael González Gómez.

De otra parte, Carenero, en el año 1995, adquirió las parcelas 6 y 7 con el propósito de desarrollar un complejo turístico. Luego, en el año 2000, DEV obtuvo la aprobación de la Consulta de Ubicación Núm. 98-77-074-JPU para el desarrollo de un proyecto eco-turístico en las parcelas 9 y 10. Un año después, en el 2001, Carenero trazó un camino de (13) metros de ancho a través de las fincas 9 y 10 propiedad de DEV, obviando así el camino existente cercano al litoral del Mar Caribe y Bahía Honda como provisto por la Escritura Núm. 23, significando **una desviación de (63) metros** del camino próximo al litoral mencionado.

El T.P.I. determinó, lo que la transcripción estipulada avala, que Carenero nunca notificó a DEV, su intención de construir el nuevo camino, inexistente aunque suene redundante, hasta entonces, ello, a pesar de que el mismo atravesaba prácticamente por el centro de las parcelas 9 y 10, propiedad de DEV, lo que las invalida para su potencial desarrollo.

A los anteriores efectos, citamos parcialmente el testimonio del Licenciado Luis E. Vázquez Santos, socio gestor de DEV, al que el foro recurrido le mereciera credibilidad.

*"TESTIGO: En la foto, en el Exhibit 7 aparece un sólo camino, según surge de la foto, que en mi opinión es el camino estrecho que corre cerca de la bahía. No aparece la carretera que está más hacia adentro de los terrenos. Es la única...la única diferencia es, pues, la carretera que aparece en esta foto que en esa no aparece.*

*POR EL LCDO. GONZÁLEZ:*

*P Licenciado Vázquez, le pregunto, quién construyó esa carretera que usted identifica en la foto que ha sido marcada como Exhibit 9.*

*R Los demandados. La que está ancha... fueron los demandados. La otra existía desde antes de que yo tan siquiera... ni había comprado. Desde que yo estaba yendo a Culebra ese camino siempre existía.*

*P Le pregunto, licenciado Vázquez, qué efecto o impacto sobre sus predios de terreno tuvo la construcción de ese camino que usted ha identificado como una carretera.*

*R    Pues, prácticamente, destruyó el proyecto. O sea, tal y como había sido aprobado no puede... construirse debido a que la carretera, prácticamente, nos dividió en... casi en dos el solar."* (Transcripción, páginas 86-87)

Cobra relieve medular en la causa que atendemos, que Carenero no notificó su intención de construir el nuevo camino y peor aún, que al enterarse de sus actos, el Lcdo. Vázquez Santos procuró y realizó una reunión con los señores Carlos Escribano y Jorge Cela, representantes de Carenero, en la que se acordó que la carretera de acceso al proyecto que se desarrollaba en las Parcelas 6 y 7 de Carenero se construiría por la parte de *"arriba"* de las Parcelas 9 y 10 y no por donde se había trazado el nuevo camino de tierra. Poco tiempo después, Carenero, faltando a su palabra y compromiso con DEV, procedió a asfaltar el nuevo camino. Ello indudablemente, pesó ante Instancia y no deja de serlo ante este Foro.

Citamos nuevamente del testimonio el Lcdo. Vázquez Santos, transcripción, págs. 91-92.

*"POR EL LCDO. GONZÁLEZ:*

*P OK. Licenciado Vázquez, le pregunto, qué ocurrió luego de esa reunión en la que según su testimonio se llegó al acuerdo de que se iba a utilizar el camino de arriba, entiéndase el camino que va por la parte superior de sus lotes.*

*R Pues, nosotros entendíamos que se había acabado toda la controversia porque se iba a tirar el camino por arriba y, sencillamente, pues, que ya no teníamos que hacer ninguna gestión, sencillamente, pues, que se iba a corregir.*

*Entre las cosas que se discutieron es que nosotros íbamos a aportar a la parte.. a la porción de la carretera que iba por arriba y ahí quedamos.*

*P ¿Y qué ocurrió luego de eso?*

*R Pues, cuando varias semanas más tarde nosotros estamos esperando para ver el resultado de estas reuniones, nos llaman de Culebra que se había asfaltado el terreno por abajo, la carretera original que se había construido.*

*P Cuando usted se refiere a que se había asfaltado el terreno ¿a qué camino se refiere?*

*R Al que aparece ancho aquí en la... en la foto.*

*Sr. Juez: ¿En la foto aparece que no está asfaltado?*

*TESTIGO: Exacto. Cuando nos reunimos todavía no estaba asfaltado. Estaba cortado el terreno.*

*Aquí cuando... después de la reunión, que entendíamos que habían llegado a un acuerdo, pues, varias semanas... lo asfaltaron. Y ahí es que entonces entendíamos que ya, pues, no podíamos... se había... ni se había cumplido con el acuerdo y que teníamos entonces que recurrir al tribunal."*

Ante lo expresado y concluido, procede expresar que si en el campo del derecho la única regla que vale es que *"el fin justifica los medios"*, en realidad estamos hablando de un sistema que niega su razón de ser.

### III

El T.P.I. de acuerdo a nuestro parecer determinó bien, cuando concluyó que el camino trazado y asfaltado, contrario a lo acordado con DEV, no fue sobre el camino existente al que alude la Escritura núm. 23, en la cual

se constituyó servidumbre de paso a favor de Carenero y, tampoco constituia una *"variante cercana"* del referido camino existente que discurría a lo largo y en la inmediación del litoral marítimo del Mar Caribe y Bahía Honda. Sostuvo el T.P.I. que no puede ser considerado cercano, próximo o, inmediato un camino que se aparta (63) metros del camino existente. Más bien, el nuevo camino buscó enderezar la ruta del camino existente hacia los predios de Carenero, a expensas de las fincas de DEV, impidiendo la viabilidad del proyecto de la segunda, cuya solicitud de consulta de ubicación había merecido la aprobación de la Junta de Planificación.

Puesto en otra dimensión, (63) metros de distancia en la isla de Culebra, versión corta del nombre original de la islita; San Idelfonso de la Culebra, quien era el obispo de Toledo, también conocida como *"Isla Chiquita"* representa una variante sustancial cuando se trata de una isla archipiélago de sólo 7,000 cuerdas, Mario Villar Roces, **Los Municipios de Puerto Rico**, Tomo 13, La Gran Enciclopedia de Puerto Rico, edición 1977. La variante de (63) metros en Culebra podría apreciarse como cercana si se tratara del desierto del Sahara. De hecho, Culebra tiene una cabida terrera de 10.3 millas cuadradas, prácticamente igual a la de la Capital Federal, Distrito de Colombia, Washington, E.E.U.U. con la única diferencia, de que todas las costas de Culebra están clasificadas como hábitat crítico, desde la década de 1980, bajo la Ley de Especies en Peligro de Extinción. Un habitat crítico es una zona que constituye el último refugio de especies que están a punto de desaparecer para siempre.

Además de lo anterior, el T.P.I. expresó que de estimarse que el camino construido por Carenero corresponde a la servidumbre a la que tuvo derecho por virtud de la Escritura Núm. 23, el citado derecho prescribió por el no uso de la servidumbre por más de veinte años. Indicó el T.P.I. que la servidumbre a la que tuvo derecho por la Escritura Núm. 23 se constituyó, o configuró, el 24 de octubre de 1974, y no fue hasta el año 2001 que los actuales titulares de la finca construyeron el camino.

En sus conclusiones de derecho, el T.P.I. señala, acertadamente, que la construcción del camino por Carenero no se ajusta, más bien incumple con los artículos 481, 500 y 501 del Código Civil, 31 L.P.R.A secciones 1673, 1731 y 1732. Los citados articulados disponen que las servidumbres de paso deben darse por el punto menos perjudicial al predio sirviente, y además, que la servidumbre debe ejercerse del modo más adecuado para obtener la utilidad para el titular del predio dominante, y a su vez del modo menos incómodo y lesivo para el titular (DEV) del predio sirviente.

En suma, el T.P.I. estimó que en la causa que atendemos, Carenero varió unilateralmente una servidumbre de paso constituida, cuando dicha facultad corresponde en consenso, a ambos titulares, a saber, el del predio sirviente y el del predio dominante. Carenero, en efecto, modificó unilateralmente la servidumbre existente, convirtiendo el camino que unilateralmente trazó y asfaltó, constituyendo así, una segunda servidumbre, ignorando previas notificaciones en contrario por parte de DEV, reuniones y acuerdos entre las partes, y lo más importante, las más apreciables normas del derecho, la buena fe y la civilidad.

Expuestos los hechos, procede que los armonicemos con el derecho vigente.

El concepto de *"finca enclavada"* surge de las disposiciones del Artículo 500 del Código Civil, *supra*, que reglamenta la figura jurídica de la servidumbre de paso forzosa. En él se establece que el propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir paso por las heredades vecinas, previa la correspondiente indemnización. De conformidad con los pronunciamientos del Tribunal Supremo, el derecho de acceso que posee el dueño de una finca enclavada es a un *"acceso razonable a su propiedad; definiéndose este derecho como la facultad de entrar y salir del fundo al sistema general de vías públicas y no a una carretera específica"*. E.L.A. v. Rodríguez, 103 D.P.R. 636, 641 (1975). Nuestro más alto foro ha reconocido que *"se estimará que un predio no tiene salida a camino público, no sólo cuando el predio no la tenga en absoluto, sino también cuando, teniéndola, la misma no es bastante segura, practicable o*

*suficiente"*. *Zayas v. Sucn. Deleccio*, 80 D.P.R. 158, 181 (1957).

Así, lo del aislamiento no ha de ser interpretado de manera absoluta o literal, sino de manera relativa a la accesibilidad del camino existente o, a la suficiencia para el mejor aprovechamiento del predio dominante. En función a ello, lo realmente importante en la concesión de una servidumbre de paso la constituye, lo que pueda o no pueda convenir a la explotación normal del fundo o, a su transformación para una más cabal aprovechamiento de su riqueza, *Id.* a la pág. 183.

Lo anterior, tomando en consideración que el propietario de una finca enclavada es libre de explotarla como mejor le plazca y que puede reclamar, por tanto, un nuevo paso si el primitivo es insuficiente cambiando aun, el modo de explotación de su finca, y que para satisfacer las nuevas necesidades tiene el derecho de **reclamar** el paso que le sea indispensable, *Id.* En las páginas 187-188. Téngase en firme que reclamar no significa unilateralmente **tomar**.

Una vez se determina que procede la constitución de una servidumbre de paso forzosa por que el fundo es una finca enclavada, el ordenamiento dispone que dicha servidumbre debe darse por el punto menos perjudicial al predio sirviente, y en cuanto fuera conciliable con esa regla, por donde sea menor la distancia del predio dominante al camino público. Art. 501, 31 L.P.R.A. §1732. Los criterios básicos a considerar, cuando existen alternativas al momento de establecerse la servidumbre de paso, serán al perjuicio que se cause a la finca que viene obligada a tolerar la servidumbre, ello en armonía con el segundo criterio, a saber, que se trace por la ruta más corta hasta el camino público. Surge también que cuando las dos condiciones no concurran paralelamente, el propio Código ofrece la solución: el paso deberá establecerse subordinando lo de la brevedad al menor daño. *Tirado v. Caro*, 72 D.P.R. 748 (1951). De otra parte, la jurisprudencia ha considerado que en la determinación del criterio del menor daño habrá que tomar en consideración cuál es el impacto ecológico que pueda causar la servidumbre de paso sobre el predio sirviente. *Soc. de Gananciales v. Srio. de Justicia*. 137 D.P.R. 70, 80 (1994).

El impacto ecológico por alguna obra o desarrollo en Culebra es más que sensitivo, crítico. El desmantelamiento ecológico y la anarquía en el desarrollo en Culebra es notoriamente conocido. El Nuevo Día, Portada, págs. 4-6, edición de 22 de enero de 2006. Por ello, si ensanchar el camino existente se hace indispensable, sería lógico considerar que su extensión fuera al lado contrario del mangle que constituye parcialmente, uno de los linderos del camino, lo cual indudablemente considerará el T.P.I.

Por otro lado, el Artículo 500 del Código Civil, 31 L.P.R.A. 1731, advierte que cuando la servidumbre de paso forzosa se constituye de manera que pueda ser continua su uso para todas las necesidades del predio dominante, estableciendo una vía permanente, la indemnización consistirá en el valor del terreno que se ocupe y el importe de los perjuicios que se causen en el predio sirviente.

El Tribunal Supremo ha establecido que es axioma judicial que ante la prueba, pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y por tanto esta facultado para apreciar la prueba apoyándose en su propio criterio. *Rodríguez Roldán v. Municipio de Caguas*, 133 D.P.R. 694 (1993); *Díaz v. Aponte*, 125 D.P.R. 1, 13 (1989).

Sobre lo antes señalado, indica el profesor Chiesa además que: *"La confiabilidad o validez de la ciencia subyacente, es otro elemento crucial para estimar el valor probatorio del testimonio pericial, y aun su admisibilidad"*, Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, Tomo II, a la pág. 595.

Con el marco que antecede, le ofrecimos consideración probatoria a los testimonios periciales y a los exhibits documentales, fotográficos y a los planos que obran en el expediente. Se hace patente que los errores uno, dos, tres y seis señalados por Carenero no se cometieron.

1173

## IV

Carenero alega en su recurso que el T.P.I. dictó sentencia contra una parte que no es titular del predio en controversia y abusó de su discreción al no desestimar la demanda de DEV por no haberse acumulado como parte a todos los titulares de los predios con derecho al paso por la servidumbre, declarada extinguida por prescripción.

Es cierto que Carenero levantó como defensa afirmativa en su Contestación a la Demanda, la falta de parte indispensable, refiriéndose a Costa Bonita Beach Resort, Inc. (*"CBBR"*) quien adquirió la propiedad de Carenero. No obstante, cuando se usurpó y asfaltó la controversial servidumbre, CBBR no estaba en la escena litigiosa. Carenero transfirió su titularidad a CBBR el 30 de octubre de 2001, cinco meses después de que DEV presentara su demanda sobre negatoria de servidumbre. También, surge de los autos que Carenero notificó la transferencia al T.P.I. dos años después de realizada.

Coincidentalmente, sin que Carenero lo refutara, surge de autos que la referida parte traspasó su activo a CBBR, cuyos únicos accionistas de ésta son los señores Escribano así como sus oficiales y directores. El señor Carlos Escribano compareció a las vistas en su fondo ante el T.P.I. como Presidente de Carenero. Concluimos que Carenero y CBBR son la misma entidad.

La determinación de si una parte debe o no ser acumulada dependerá de los hechos específicos de cada caso, donde habrá que hacer una evaluación jurídica de factores particulares, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultados y finalidad. *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593, 605 (1989).

Carenero señala como error que el T.P.I. adjudicó similar controversia como la que se encuentra ante este foro, ofreciéndole validez al contenido del mismo plano de segregación que en el presente litigio rechaza. Como bien señala DEV, la aludida sentencia atiende unas controversias que no pueden insertarse en la que atendemos y además, las partes lograron una transacción, por lo que no es pertinente la normativa enunciada en *Archevali Shuck v. E.L.A.*, 110 D.P.R. 767 (1981). De lo expuesto, los errores señalados cuatro, cinco y siete no se cometieron.

Reiteramos una vez más la norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos en ausencia de error, pasión, prejuicio o parcialidad no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de crebibilidad realizadas por los tribunales de instancia. *Trinidad García v. Chade*, 153 D.P.R. 280 (2001). En la causa que hemos considerado cabalmente y que ambas partes han presentado articuladamente, no detectamos fundamento o razón alguna para determinar contrario a como lo realizara el T.P.I.

## V

Por lo expresado, se confirma la Sentencia parcial emitida por el T.P.I. y se devuelve la causa para que prosiga la determinación de daños. Se instruye a Instancia que tome las medidas cautelares necesarias en lo que se revierte a la servidumbre existente, para que no se obstruya el paso de los huéspedes y residentes de CBBR.

## VI

Por lo expuesto, se confirma la sentencia apelada.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria Tribunal de Apelaciones.

La Juez Pesante Martínez emite Voto Disidente con opinión escrita.

**VOTO DISIDENTE HON. CARMEN ANA PESANTE MARTINEZ – 2006 DTA 59**

San Juan, Puerto Rico, a 14 de marzo de 2006

Disiento respetuosamente de la decisión del Panel al confirmar la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo. Mediante la referida sentencia, el Tribunal consideró probado que Desarrolladora Punta Carenero, Sociedad En Comandita, S.E. y Desarrolladora Punta Carenero, Inc. ocupaban y utilizaban una porción de terreno de ciertas parcelas pertenecientes a la parte demandante apelada, DEV, S.E.; que dicha franja atraviesa por el centro de las referidas parcelas y la misma no se ajusta a la localización y al rumbo de la servidumbre de paso constituida en la Escritura 23. El TPI determinó que la modificación unilateral de la servidumbre en la colindancia sur de la inmediación del litoral marítimo del Mar Caribe y Bahía Honda fue de tal magnitud que resultaba gravosa [y en extremo onerosa] para el predio sirviente [parcelas 9 y 10 propiedad de la demandante], convirtiéndose *de facto* en una segunda servidumbre.

Examinada e interpretada la voluminosa evidencia esencialmente documental y pericial, el TPI declaró con lugar la demanda incoada por DEV, S.E. [sobre negatoria de servidumbre, solicitud de cese y desista] y en su consecuencia prohibió a las co-demandadas la utilización de los predios de terreno en controversia, así como también, les ordenó restituir los terrenos de las parcelas de la demandante al estado original y abstenerse permanentemente de intervenir en estos predios, excepto cuando se trate del ejercicio de los actos propios de la servidumbre que reconoce el Tribunal. █

La sentencia apelada tiene el efecto de variar el curso de la servidumbre que hasta ese momento existía. Sin embargo, dicho dictamen, a nuestro juicio, carece de validez, por cuanto se pronunció sin que fueran traídos al pleito ciertas partes indispensables. Nos explicamos.

La demanda sobre negatoria de servidumbre y otros aspectos fue presentada por DEV, S.E. contra Desarrolladora Punta Carenero, Sociedad En Comandita, S.E. y Desarrolladora Punta Carenero, Inc., el 13 de junio de 2001. El 14 de agosto siguiente, los demandados contestaron la demanda. Tras varios trámites procesales, Desarrolladora Punta Carenero, Sociedad En Comandita, S.E. presentó al TPI escrito intitulado *"Moción Informativa"* en el que consignaba que mediante escritura pública Núm. 16, otorgada el 30 de octubre de 2001, ante el Notario Público Francisco José García García habían transferido el dominio sobre la propiedad en controversia a Costa Bonita Beach Resort, Inc. En respuesta a lo anterior, el 20 de marzo siguiente, el Tribunal emitió una resolución dándose por enterado. Ambos escritos: la Moción Informativa transfiriendo la titularidad de la propiedad, como la resolución del TPI fueron notificadas a la parte demandante apelada. No obstante, ésta nada hizo por enmendar la demanda a los fines de traer el pleito al actual titular de la propiedad. No albergamos dudas que esta es una parte indispensable de conformidad con los criterios esbozados por la Regla 16.1 de las de Procedimiento Civil y su jurisprudencia interpretativa.

En lo pertinente la precitada Regla dispone:

*"Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se*

*harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada."*

En *Deliz Muñoz v. Igartúa Muñoz,* **2003 J.T.S. 7,** el Tribunal Supremo definió parte indispensable como aquélla que su grado de interés es tal que no puede dictarse un decreto final entre las partes sin lesionar y afectar radicalmente sus derechos. Dicho de otro modo, parte indispensable es aquélla cuyos intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona [natural o jurídica] ausente del litigio. Véase, además, *Cepeda Torres v. García Ortiz,* 132 DPR 698(1993); *Rodríguez Rodríguez v. Moreno Rodríguez,* 135 DPR 623 (1994).

La persona que reúna los criterios para considerarse parte indispensable tendrá que ser traída al pleito para que tenga validez la sentencia que en su día pueda dictarse. Más aún, ausente un planteamiento de falta de parte indispensable ante el TPI, el mismo puede levantarse por primera vez ante un tribunal apelativo o éste esgrimirlo *sua sponte.*

Al no enmendar la demanda para traer al pleito a Costa Bonita Beach Resort, Inc., ente jurídico con personalidad propia independientemente de sus accionistas o socios de Punta Carenero, constituyó un error por el cual considero debe revocarse la sentencia apelada. Es por ello que disiento.

**HON. CARMEN ANA PESANTE MARTINEZ**
**Juez de Apelaciones**

**ESCOLIO VOTO DISIDENTE HON. CARMEN ANA PESANTE MARTINEZ - 2006 DTA 59**

**1.** Pág. 23 de la Relación del Caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia Parcial, emitida el 2 de marzo de 2004 por el Hon. Ismael R. Colón Pérez, Juez Superior.