El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
El recurso ante nuestra consideración nos permite resolver si la figura de la prescripción adquisitiva o usuca-pión tiene cabida en el régimen de propiedad horizontal regulado por la Ley Núm. 103-2003 (Ley de Condominios), 31 L.P.R.A. sec. 1291 et seq.
Además, debemos determinar si el consejo de titulares puede usucapir parte de un apartamento inscrito como pri-vativo en el Registro de la Propiedad y, en consecuencia, afectar su cabida y destinarlo a un uso distinto al que consta en la escritura matriz y en los planos presentados ante tal Registro, sin contar con el consentimiento uná-nime de los integrantes del régimen. Concluimos que la Ley de Condominios impide la adquisición por prescripción adquisitiva o usucapión de los elementos comunes, pero permite la de los elementos privativos. Resolvemos que no se puede variar el uso y destino ni la descripción registral del bien adquirido sin el consentimiento unánime de todos los titulares. A su vez, determinamos que el consejo de ti-tulares está impedido de usucapir parte del apartamento privativo ante nuestra consideración debido a que tal ac- *835 tuación quebranta el propósito por el cual ese organismo fue creado y contraviene la Ley de Condominios.
I
Los hechos ante nuestra consideración son sencillos y conciernen al apartamento 1-G del Condominio Palma Real. Este condominio fue sometido al régimen de propie-dad horizontal en 1968. La escritura matriz del Condomi-nio Palma Real no expresa que en la primera planta del edificio haya un área destinada a instalaciones eléctricas o telefónicas. Este es un hecho estipulado por las partes. La escritura sí describe la cabida física del apartamento 1-G. Esta incluye el área del clóset en cuestión, la cual consta delimitada en los planos presentados ante el Registro de la Propiedad como parte del apartamento.
El consejo de titulares ha utilizado un área del armario del apartamento 1-G para la instalación de los contadores eléctricos que suplen electricidad a los apartamentos 1-H, 1-J, 1-K, 2-F, 2-G, 2-H, 2-1, 2-J y 2-K del condominio.
El 28 de junio de 2001 el Sr. Sol Bravman y la Sra. Carmen González Hernández (esposos Bravman-González) adquirieron de F.M. Investment Corporation el aparta-mento 1-G del condominio. El 12 de junio de 2003, los es-posos Bravman-González presentaron una demanda contra el desarrollador del condominio y la Junta de Directores. En ella, alegaron que al poco tiempo de adqui-rir su apartamento se percataron que el clóset del dormi-torio principal había sido segregado mediante la construc-ción de una pared. En consecuencia, solicitaron que se les restituyera el uso y la posesión de la referida área. Poste-riormente, enmendaron la demanda para incluir al consejo de titulares. Aluden que esas actuaciones violaron el Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291.
*836 En respuesta, el consejo de titulares alegó que el clóset nunca fue parte del apartamento 1-G. Adujo que desde la construcción del condominio esa área se utilizó para la ins-talación de los contadores eléctricos sin que se enmendara la escritura matriz. Además, argüyó que ha poseído y ad-quirido el área por prescripción adquisitiva extraordinaria.
Posteriormente, y con miras a finiquitar las controver-sias, las partes presentaron el 28 de febrero de 2006 una estipulación en la que exponían que el consejo de titulares entregaría a los esposos Bravman-González una porción del clóset donde están ubicados los contadores de energía eléctrica. La segregación de ese espacio se haría conforme a lo requerido por la Autoridad de Energía Eléctrica y a la aprobación de esa agencia. Para lograr el acuerdo, el con-sejo de titulares sufragaría los honorarios de $1,500 del ingeniero electricista por el diseño de los planos y la pre-sentación ante la Autoridad de Energía Eléctrica y los ho-norarios ascendentes a $14,500 para realizar el trabajo. Por su parte, los esposos Bravman-González aportarían la suma de $1,000 para la construcción de una pared en blo-ques de cemento que separaría el área de los contadores con el área entregada por el consejo de titulares y cual-quier diferencia en el costo de la pared sería costeada por ese organismo.(1) El acuerdo debía ser ratificado por el con-sejo de titulares en una asamblea debidamente convocada a tales efectos.
La estipulación fue acogida por el Tribunal de Primera Instancia mediante una sentencia emitida el 13 de marzo de 2006. Sin embargo, posteriormente fue dejada sin efecto debido a que no fue ratificada en la asamblea correspon-diente, convocada por el consejo de titulares.
Entrabados los reclamos, el 22 de julio de 2009 el Tribunal de Primera Instancia emitió una sentencia en la que aludió a los hechos reseñados y concluyó que el consejo de titulares adquirió el clóset por prescripción adquisitiva *837 extraordinaria. Ello, al ostentar la posesión pública y pací-fica en concepto de dueño de forma continua e ininterrum-pida por más de treinta años. El foro primario expresó que el dueño del apartamento nunca tuvo acceso al clóset ni prestó su autorización, permiso o licencia para que el con-sejo de titulares lo ocupara. A su vez, advirtió que el dueño original interpuso una demanda en 1993 que fue desesti-mada por incumplimiento e inactividad mediante una sen-tencia que advino final y firme, por lo que adjudicó que ésta no tuvo efecto interruptor para el cómputo del término de prescripción adquisitiva.
Finalmente, el Tribunal de Primera Instancia coligió que no existe conflicto entre la Ley de Condominios y la prescripción adquisitiva contenida en el Código Civil que impida la usucapión en un complejo constituido en el régi-men de propiedad horizontal. Además, estimó que el con-sejo de titulares cumplió con los requisitos para adquirir el armario por prescripción adquisitiva extraordinaria.
Inconformes, los esposos Bravman-González acudieron al Tribunal de Apelaciones en donde expusieron que el cló-set no es susceptible de ser adquirido por usucapión y que de permitirse tal actuación variaría el uso comprendido del bien inmueble sin el consentimiento unánime de los titulares. El foro intermedio emitió una sentencia me-diante la cual confirmó el dictamen del Tribunal de Pri-mera Instancia.
En desacuerdo, los esposos Bravman-González acuden ante nos y sostienen que erró el Tribunal de Apelaciones al confirmar al Tribunal de Primera Instancia y al permitir la adquisición por usucapión del área privativa para desti-narla a un uso comunal sin el consentimiento unánime de los condominos.
Examinado el recurso ante nos, lo expedimos y procede-mos a resolverlo en los méritos.
*838 II
Nuestro ordenamiento jurídico permite la adquisición del dominio y de todos los derechos reales en virtud de la prescripción adquisitiva o usucapión. Art. 1830 del Código Civil, 31 L.P.R.A. sec. 5241. Para que ésta se configure, es indispensable que estemos ante una cosa o un derecho susceptible de apropiación por un tiempo determinado y según las condiciones que dicta la ley. Art. 1836 del Código Civil, 31 L.P.R.A. sec. 5247; J.R. Vélez Torres, Los bienes y los derechos reales, Madrid, Ed. Offirgraf, 1983, T. II, pág. 263. Una vez establecido lo anterior es importante distinguir entre la prescripción adquisitiva ordinaria y la extraordinaria. Repasamos brevemente estas figuras jurídicas.
Tanto la usucapión ordinaria como la extraordinaria re-quieren que exista una posesión ininterrumpida, pública, pacífica y en concepto de dueño por el término fijado en la ley. Arts. 1840-1841 del Código Civil, 31 L.P.R.A. secs. 5261-5262; Sánchez González v. Registrador, 106 D.P.R. 361, 375 (1977).
En la prescripción adquisitiva ordinaria se requiere la posesión mediante la concurrencia de buena fe y justo título junto al transcurso de diez aiños según un tiempo fijado por la ley. Art. 1857 del Código Civil, 31 L.P.R.A. sec. 5278. El concepto buena fe “consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella, y que podía transmitir su dominio”. Art. 1850 del Código Civil, 31 L.P.R.A. sec. 5271; Ramos v. Ríos, 79 D.P.R. 738, 740-741 (1956); Rivera v. Meléndez, 72 D.P.R. 432, 439-440 (1951). Por su parte, el título se entiende justo cuando es legalmente suficiente “para transferir el dominio o derecho real de cuya prescripción se trate”. Art. 1852 del Código Civil, 31 L.P.R.A. sec. 5273. Además, conforme al Art. 1853 del Código Civil, 31 L.P.R.A. sec. *839 5274, el título debe ser verdadero y válido. Sin embargo, el justo título no significa que éste deba ser perfecto. Lizardi v. Caballero, 65 D.P.R. 83, 93 (1945).
Por su parte, la prescripción adquisitiva extraordinaria no requiere el elemento de buena fe ni de justo título, por lo que se le requiere al poseedor un término más prolongado para que pueda adquirir la cosa o el derecho. En ésta, el término requerido es de treinta años para los bienes inmuebles. Art. 1859 del Código Civil, 31 L.P.R.A. sec. 5280; Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154, 182 (2005).
El Código Civil exige una posesión en concepto de dueño porque “sólo la posesión que se adquiere y se disfruta en concepto de dueño puede servir de título para adquirir el dominio”. J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed., Barcelona, Ed. Bosch, 1989, T. Ill, Vol. I, pág. 318. Se considera como dueño en posesión de un inmueble aquel que la opinión general o la percepción pública entienden es el dueño, unido a los actos que éste realice con relación a la propiedad, independientemente de la creencia que pueda tener el propio poseedor. Vélez Cordero v. Medina, 99 D.P.R. 113, 119 (1970).
Es por ello que la norma vigente sostiene que los actos de carácter posesorio ejecutados por licencia o mera tolerancia del dueño no son suficientes para cumplir con los requisitos de la prescripción extraordinaria, ya que falta el requisito de la posesión en concepto de dueño. Es decir, aquel que posee con permiso, licencia o autorización del dueño no puede adquirir un derecho real por prescripción adquisitiva debido a que nunca estuvo en posesión de la propiedad en concepto de dueño. En este sentido, es doctrina firmemente establecida en el derecho civil que, como norma general, todos los que poseen en nombre o en representación de otro no pueden adquirir el dominio poseído por ellos, ni ningún otro derecho, por virtud de la prescrip- *840 ción ordinaria o extraordinaria. Véanse: Sánchez González v. Registrador, supra, pág. 375; Dávila v. Córdova, 77 D.P.R. 136, 143-148 (1954), Sucn. Maldonado v. Sucn. Maldonado, supra, pág. 183. En estos casos estamos ante un precarista.
Igualmente, debemos recordar que se presume que la posesión se sigue disfrutando en la misma forma como se adquirió si no se presenta una prueba contraria. Art. 365 del Código Civil, 31 L.P.R.A. sec. 1426; Vélez Cordero v. Medina, supra, pág. 120.
Como la adquisición por prescripción requiere que se cumpla con determinado tiempo, debemos indicar que la posesión se entiende interrumpida por: (1) la citación judicial hecha por el poseedor, aunque sea por un mandato del tribunal o un juez incompetente; (2) el requerimiento judicial o notarial, siempre que en los dos meses de practicado se presente, ante el tribunal o el juez, la demanda sobre la posesión o el dominio de la cosa cuestionada, y (3) el reconocimiento expreso o tácito que el poseedor haga del derecho del dueño. Véanse los Arts. 1845, 1847 y 1848 del Código Civil, 31 L.P.R.A. secs. 5266, 5268 y 5269.
En cuanto a la interrupción por citación judicial, se considerará que no interrumpe el término para adquirir por prescripción adquisitiva cuando: (1) fuere nula por falta de las solemnidades legales; (2) el actor desistiere de la demanda o dejare caducar su reclamo, y (3) si el poseedor fuere absuelto en la demanda. Art. 1846 del Código Civil, 31 L.RR.A. sec. 5267.
Ill
Las controversias planteadas requieren que dilucide-mos si la figura de la prescripción adquisitiva tiene cabida en el régimen de propiedad horizontal y las consecuencias que ello acarrea. Para atender los referidos planteamien- *841 tos nos remitimos primero a los principios y al propósito del régimen de propiedad horizontal. Veamos.
Los principios del referido sistema en Puerto Rico surgen del Art. 403 del Código Civil de 1902, que luego se convirtió en el Art. 330 del Código Civil de 1930 (31 L.P.R.A. sec. 1275); Castle Enterprises, Inc. v. Registrador, 87 D.P.R. 775 (1963). Posteriormente, los países europeos y americanos co-menzaron a legislar leyes especiales sobre la llamada pro-piedad horizontal con miras a atender las insuficiencias de los códigos civiles vigentes. Como corolario de esa tendencia, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 421 de 13 de mayo de 1951 (Ley Núm. 421) para enmendar en términos generales el Art. 330 del Código Civil, supra. Sin embargo, en 1958, la Asamblea Legislativa justipreció que la Ley Núm. 421 era insuficiente sobre los aspectos vi-tales de la propiedad horizontal, como: (a) el nacimiento y la extinción de ésta; (b) el régimen de su administración; (c) la organización del Registro de la Propiedad; (d) los graváme-nes, y (e) el equilibrio de derechos y deberes entre los propietarios. Por lo tanto, la Legislatura aprobó la Ley Núm. 104 de 25 de junio de 1958 (Ley de Propiedad Horizontal), 31 L.P.R.A. sec. 1291 et seq.(2)
La Ley de Propiedad Horizontal tomó como modelo la Ley-Decreto Núm. 407 de 16 de septiembre de 1952 de la República de Cuba. Originalmente, se preparó un proyecto basado en la Ley de Argentina que fue descartado. Se pre-firió utilizar como marco la Ley de Cuba, por guardar ésta mayor consonancia con nuestro Derecho. Véase S.E. Case-llas, Comentarios y notas: legislación en torno a la nueva Ley de la Propiedad Horizontal, 28 Rev. Jur. U.P.R. 301 (1958-1959).
La adopción de la propiedad horizontal respondió al interés de fomentar la viabilidad para adquirir propie- *842 dades y, a su vez, atender el problema de la vivienda en nuestra isla, aprovechando el escaso terreno disponible. X Diario de Sesiones de la Asamblea Legislativa (Cámara) 1649 (1958); E. Vázquez Bote, Prolegómenos al régimen de la horizontalidad en derecho puertorriqueño, 16 Rev. Der. Pur. 301, 308 (1976-1977); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 242 (1978). La Ley de Propiedad Horizontal no derogó el Art. 330 del Código Civil, supra, sobre el régimen de pisos. Este funciona con carácter su-pletorio cuando los residentes de un edificio deciden no adoptar el régimen de la propiedad horizontal, el cual es voluntario. J.A. Landrau Rivera y J.C. Ortiz Arocho, Régi-men de propiedad horizontal: retrospectiva y actualización, 43 (Núm. 1) Rev. Der. Pur. 57, 61 (2004).
Más adelante la Ley de Propiedad Horizontal fue en-mendada por la Ley Núm. 153-1995,(3) la Ley Núm. 43-1996(4) y la Ley Núm. 157 de 4 de junio de 1976.(5) Las revisiones realizadas debilitaron los derechos de los titula-res de los apartamentos al someterse a imposiciones acor-dadas por la mayoría. Ello trastocó la filosofía que en-marca este tipo de organización, la cual consiste en el pleno disfrute de la propiedad privativa. Landrau y Ortiz, supra, págs. 65-66.
*843 Ante tal problemática, se enmendó nuevamente la Ley de Propiedad Horizontal en el 2003 con la aprobación de la Ley de Condominios. Esta tuvo como objetivo ajustar el régimen de propiedad horizontal a uno más eficiente y hacer factible el derecho a la propiedad individual sobre un apartamento en un edificio, salvaguardando el fin de aprovechar al máximo posible nuestra extensión territorial. En este sentido, el legislador expresó lo siguiente:
Las características fundamentales del Régimen de Propie-dad Horizontal en Puerto Rico son: (1) el disfrute del aparta-miento como núcleo del régimen y de ahí la preservación del requisito de consentimiento unánime para toda obra o acción que afecte directamente su disfrute; (2) el carácter privile-giado de este esquema urbanístico en tanto atiende el fin social de propiciar la disponibilidad de viviendas en un área res-tringida de terreno; (3) el principio de que sea el Consejo de Titulares —y no una Junta de Directores— el órgano donde resida el control último de las decisiones sobre la administra-ción del inmueble; (4) el reconocimiento de la personalidad jurídica propia de dicho Consejo de Titulares; (5) el carácter catastral de este régimen voluntario; (6) la necesidad de legis-lación especial para atender la naturaleza singularísima de los problemas que surgen en la horizontalidad; y, finalmente, (7) la disponibilidad de un foro especializado para atender con agilidad los conflictos que puedan surgir entre los diversos integrantes del régimen son postulados de nuestro régimen de propiedad horizontal que lo definen y que deben preservarse y fortalecerse. Exposición de Motivos de la Ley de Condominios, 2003 (Parte 1) Leyes de Puerto Rico 356.
De tal grado es la relevancia de velar por la demanda de vivienda y propender el uso de la propiedad horizontal para la asequibilidad de la propiedad individual que el le-gislador expresamente dispuso que la Ley de Condominios aplicaría a todo inmueble adscrito al régimen de propiedad horizontal independientemente de cuándo fue sometido a éste. Art. 44 de la Ley de Condominios, 31 L.P.R.A. sec. 1291 n.; Pereira Suárez v. Jta. Dir. Cond., 182 D.RR. 486 (2011); S.L.G. Vázquez-Ibáñez v. De Jesús, Vélez, 180 D.P.R. 387 (2010); Consejo Titulares v. Williams Hospita *844 lity, 168 D.P.R. 101, 109-110 (2006); Asoc. de Condómines v. Naveira, 106 D.P.R. 88, 91 (1977); M.J. Godreau, El condominio: El régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, pág. 19.
Con el beneficio de la discusión intimada, enfoquemos nuestra atención en la naturaleza del régimen, los elemen-tos que lo componen y la figura del consejo de titulares.
El régimen de propiedad horizontal es una institución jurídica de perfiles propios y características conceptuales esenciales que establecen un dominio exclusivo de un bien inmueble, el cual “coexiste con un condominio forzoso e inseparable de los elementos comunes”. Arce v. Caribbean Home Const. Corp., supra, pág. 236.
La propiedad horizontal es una figura sui géneris mati-zada por un interés jurídico de mantenerla y potenciar su desarrollo. Esto, contrario a la copropiedad o comunidad, la cual como regla general surge en casos en los que con-curren múltiples titulares sobre un mismo bien por razón de hechos fortuitos o involuntarios, por lo que se promueve la desaparición de ese régimen.(6) Godreau, op. cit., págs. 21-23; O. Gómez Gil, La Propiedad Horizontal en Cuba, La Habana, Ed. Lex, 1954, págs. 50-54.
El sistema de horizontalidad constituye un acto voluntario sobre el cual existe una comunidad solo con referencia a los elementos comunes, indispensables para el debido disfrute y viabilidad de la propiedad individualizada. Por lo tanto, resulta distinguible de la comunidad típica. Esos elementos comunes pertenecen a todos los titulares, no son de alguien en particular, y permanecen en indivisión forzosa sin que puedan ser objeto de la acción de división de la comunidad. Art. 13 de la Ley de Condominios, 31 L.P.R.A. sec. 1291k. Claro está, su destino y uso estará sujeto a los cambios que, por unanimidad, acuerden sus dueños. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291.
*845 La escritura que constituye el orden de propiedad horizontal es de tal relevancia que este Tribunal ha señalado constantemente que una vez sea inscrita en el Registro de la Propiedad, ésta pasa a ser un estatuto privado que gobierna a los condominos o titulares y obliga a terceros. Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582 (1973). A estos efectos, hemos expresado que la escritura matriz es una especie de acuerdo “privado —al cual se adhieren los titulares cuando compran sus respectivos apartamentos— que gobierna a los condominos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales disposiciones violen la ley, la moral o el orden público. 31 L.P.R.A. sec. 3372; Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582 (1973)”. (Enfasis en el original.) Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 232 (2001), citando a Consejo Tit. Cond. McKinley Court v. Rullán, 126 D.P.R. 387, 394 (1990). La escritura matriz forma un estado de derecho que ha de ser aceptado por los sucesivos titulares a medida que éstos adquieran sus apartamentos en el régimen. Arce v. Caribbean Home Const. Corp., supra, pág. 245. Esta constituye la “fuente vinculante para los condominos, luego de la Ley”. Godreau, op. cit., pág. 71.
De otra parte, trasciende que una de las características del régimen de propiedad horizontal es que su naturaleza es de carácter voluntario, constitutivo vía la inscripción y catastral. Véanse los Arts. 22 al 33 de la Ley de Condominios, 31 L.P.R.A. secs. 1292-1292k. La propiedad horizontal está rigurosamente supeditada al requisito de inscripción registral. Art. 2 de la Ley de Condominios, supra; García Larrinua v. Lichtig, 118 D.P.R. 120, 128 (1986). De acuerdo con ello, la Ley de Condominios requiere que la escritura pública sea inscrita en el Registro de la Propiedad y describa cada apartamento y número con sus medidas, situación, piezas de que conste, puerta principal de entrada y lugar con el cual inmediatamente comunique y *846 demás datos necesarios para su identificación. Deberá, a su vez, constar la superficie de la totalidad de los aparta-mentos y de acuerdo con éstas se fijará el porcentaje de los gastos, las ganancias y los derechos en los elementos comunes. Véanse los Arts. 2, 22, 23 y 24 de la Ley de Con-dominios, 31 L.P.R.A. sees. 1291, 1292, 1292a, y 1292b.(7) La descripción de los apartamentos constituye una finca aparte de la matriz. Art. 25 de la Ley de Condominios, 31 L.P.R.A. sec. 1292c.
De igual forma, la escritura pública debe identificar y detallar los elementos comunes generales del inmueble y los elementos comunes limitados que existan en cierto nú-mero de apartamentos. Igualmente, la Ley de Condominios requiere que se indique claramente el destino de los ele-mentos que lo configuran. Una vez fijado el destino y uso en la escritura matriz solo podrá ser variado mediante el consentimiento unánime de los titulares. Art. 2 de la Ley de Condominios, supra. Conjuntamente con la escritura matriz se certifica que los planos sometidos al Registro de la Propiedad son una copia fiel y exacta de los aprobados. Art. 22 de la Ley de Condominios, supra.
Lo anterior resulta de suma importancia porque de acuerdo con ello la Ley de Condominios establece un requi-sito de inscripción constitutiva para someter el inmueble al sistema de propiedad horizontal con características catas-trales que, contrario a la norma general, convierten al Re-gistro de la Propiedad en un garantizador de la cabida. Lo expuesto conlleva que la realidad extrarregistral tiene que corresponder a la que surge del Registro de la Propiedad.
La escritura matriz y los planos adheridos a ésta en un régimen de horizontalidad permiten a un comprador o titular conocer la totalidad del edificio y su apartamento *847 para hacer valer su derecho. Arce v. Caribbean Home Const. Corp., supra, págs. 257-258; Soc. de Gananciales v. Srio. de Justicia, 137 D.P.R. 70, 77 (1994); García Larrinua v. Lichtig, supra, pág. 133; Godreau, op. cit., pág. 20. Así, este Tribunal, no vaciló en establecer que:
No puede fomentarse, como cuestión de política pública, la in-discriminada y no autorizada alteración de los apartamentos que componen un edificio sujeto a dicho régimen. Dichas alte-raciones pueden poner en riesgo no sólo la vida y seguridad de los dueños de esos apartamentos, sino que la de los otros condominos. Debe mantenerse presente que la alteración de un apartamento no sólo puede afectar la estética del edificio, sino que la solidez estructural del mismo. Posiblemente esta sea una de las situaciones donde más claramente es de apli-cación el principio a los efectos de que los derechos de una persona terminan donde comienzan los derechos de otra. Gar-cía Larrinua v. Lichtig, supra, pág. 135.(8)
Establecido lo anterior, al adquiriente o titular de una finca adscrita al régimen de la Ley de Condominios se le garantiza la cabida que surja del Registro de la Propiedad, pero no necesariamente la titularidad de su apartamento. Godreau, op. cit., pág. 20. Lo anterior resulta cónsono con el Art. 4 de la Ley de Condominios, 31 L.P.R.A. sec. 1291b, que destaca que, una vez incorporada una propiedad al régimen y constituida en una finca independiente, los apartamentos que lo componen pueden transmitirse individualmente, gravarse, ser objeto de dominio o posesión, y de toda clase de actos jurídicos ínter vivos o mortis causa, con libertad total del resto del inmueble y pueden inscribirse en el Registro de la Propiedad.
Por otra parte, para el disfrute de los bienes privativos que componen la propiedad horizontal resultan in *848 dispensables los elementos comunes. Éstos se encuentran delimitados en la escritura matriz y en el plano presentado ante el Registro de la Propiedad y sobre los cuales a sus integrantes se les reconoce un derecho de uso y disfrute por el cual aportan al mantenimiento de éstos conforme a un porcentaje. Ésta peculiaridad nos presenta unas preocupa-ciones particulares al considerar si procede o no la usuca-pión o prescripción adquisitiva en el ordenamiento de pro-piedad horizontal que debemos atender.
No existe controversia sobre el hecho de que los elemen-tos comunes en el régimen de propiedad horizontal son to-dos aquellos que sean necesarios para la existencia, segu-ridad y conservación del edificio, y que están destinados al uso y disfrute de todos los propietarios conforme a su des-tino, sin impedir o estorbar el legítimo derecho de los demás. Art. 14 de la Ley de Condominios, 31 L.P.R.A. sec. 12911. Véase, además, Consejo Tit. Cond. McKinley Court v. Rullán, supra, pág. 393. Como expresamos, éstos están totalmente definidos en la escritura matriz y en los planos sometidos al Registro de la Propiedad.
Los elementos comunes se clasifican en necesarios y elementos comunes voluntarios. La razón para ello estriba en que no todas las partes de uso común tienen el mismo valor o importancia en el papel que desempeñan. La distinción consiste en que los elementos comunes necesarios son indispensables para el disfrute de la propiedad privada de los apartamentos. Ese carácter fue reconocido por el legislador en la Ley de Condominios al expresar que éstos no son susceptibles de propiedad individual por los titulares y están sujetos a un régimen de indivisión forzosa, es decir, no pueden ser objeto de propiedad particular por uno de los titulares pretendiendo excluir a los demás, pues ello resultaría incompatible con el buen funcionamiento del condominio. Art. 11(a) de la Ley de Condominios, 31 L.PR.A. sec. 1291i(a). Brown III v. J.D. Cond. Playa Grande, supra, pág. 233; Pellón v. O’Clare, 98 D.P.R. *849 692, 695 (1970). El inciso (a) del Art. 11 de la Ley de Con-dominios, supra, claramente dispone que “cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo”. (Enfasis nuestro.)
En cambio, los elementos comunes voluntarios pueden quedar sometidos a lo que dispongan todos los integrantes del régimen. Brown III v. J.D. Cond. Playa Grande, supra, pág. 237; Arce v. Caribbean Const. Corp., supra, págs. 237-238. Siendo ello así, se permite la transformación de un elemento común en privado con el consentimiento unánime de los titulares. Véanse: Informe Conjunto de las Comisiones de Vivienda, de Banca y Asuntos del Consumidor, y de lo Jurídico sobre el P. del S. 1425 de 12 de noviembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria; M.J. Godreau, La Privatización de los elementos comunes en los condominios: reflexiones en torno a posibles enmiendas a la Ley de Propiedad Horizontal, 66 Rev. Jur. U.P.R. 149, 172-173 (1996).
Los elementos comunes pueden ser generales y limitados. Conforme dispone el Art. 12 de la Ley de Condominios, los elementos comunes limitados se destinan a cierto número de apartamentos con exclusión de los demás, tales como pasillos, escaleras, servicios sanitarios comunes a los apartamentos de un mismo piso y otros análogos. 31 L.P.R.A. sec. 129lj. Por tal razón, el Art. 13 de la Ley de Condominios establece que el mantenimiento de éstos corresponde a los titulares de los apartamentos a los que fueron destinados. 31 L.P.R.A. sec. 1291k.
Además de las fincas privativas y los elementos comunes, en el 2003 la Ley de Condominios incorporó en su Art. 11-A (31 L.P.R.A. sec. 1291Í-1) el llamado elemento procomunal. Este artículo define el elemento procomunal como “aquellas áreas susceptibles de aprovechamiento independiente, sean apartamientos, estacionamientos o loca *850 les, cuya titularidad le haya sido asignada al Consejo de Titulares”. (Enfasis nuestro.) Además, establece que tam-bién son elementos procomunales “las unidades privadas que adquiera el Consejo de Titulares mediante cesión, eje-cución en cobro de deudas o por cualquier otro medio legítimo”. íd.
La procomunalidad la define Vázquez Bote como “la ti-tularidad proindiviso que tienen los titulares en la horizon-talidad sobre un piso o apartamento”. Vázquez Bote, supra, pág. 330. Así estamos ante un área que, no es elemento común, sino que pertenece proindiviso a los titu-lares del régimen.
Del historial legislativo de la Ley de Condominios surge que el elemento procomunal se agregó para facilitar el manejo de apartamentos y de áreas susceptibles de aprovechamiento privado. Específicamente se pretendió atender el problema que causaba la ejecución o enajenación de apartamentos en cobro de deudas de mantenimiento. Es por ello que el legislador atendió la “enajenación de los elementos procomunales”, a través del Art. 11-A de la Ley de Condominios, supra, al reconocer al consejo de titulares la facultad para adquirir propiedades y ser titular de éstas en su función de administrar y mantener el régimen en beneficio de sus integrantes. A base del referido articulado, el consejo de titulares solamente posee titularidad de aquello que le haya sido asignado en la escritura matriz. De igual forma, la necesidad de ejecutar apartamentos para el cobro de deudas de mantenimiento promulgó que el legislador reconociera al consejo de titulares la prerrogativa de adquirir esas propiedades mediante cesión, ejecución para el cobro de deudas o por cualquier otro medio legítimo. Véase P. del S. 1425 de 12 de noviembre de 2002, supra.
El consejo de titulares es el órgano deliberativo y normativo, integrado por los condominos y existe para la *851 consecución del sistema de propiedad horizontal. (9) Su res-ponsabilidad fundamental consiste en velar por el buen fun-cionamiento del condominio para lograr que se cumplan con las disposiciones de su ley especial, la escritura matriz, el reglamento y los acuerdos aprobados debidamente. M.J. Go-dreau, Personalidad jurídica, legitimación activa y propie-dad horizontal: capacidad legal de la junta de directores y del presidente para llevar acciones a nombre del condomi-nio, 64 Rev. Jur. U.P.R. 481 (1995).
Este Tribunal desde Arce v. Caribbean Home Const. Corp., supra, prestó atención a la figura del consejo de titulares.(10) En aquel entonces, este Tribunal indicó que el consejo de titulares está compuesto por todos los dueños de apartamentos individuales que constituyen el régimen de propiedad horizontal. A su vez, citando a Gómez Gil, esta Curia estableció que compartía la tesis que considera al consejo de titulares como un “auténtico sujeto de derecho con personalidad plena en el ámbito de sus finalidades”. (Énfasis nuestro.) íd., pág. 253. Como bien señala Go-dreau, op. cit., pág. 29, “estos pronunciamientos respon-den, a nuestro entender, a la finalidad de propiciar una mayor protección y solidez del Régimen de Propiedad Horizontal”.
El reconocimiento que hizo este Tribunal al consejo de titulares como un ente con personalidad jurídica plena en el ámbito de sus finalidades distinguió nuestro régimen de otros ordenamientos como el español y de los que existen en muchas jurisdicciones norteamericanas. Godreau, su *852 pra, págs. 481-482. Además, caló en la Asamblea Legisla-tiva a tal grado que al aprobar la Ley de Condominios el legislador armonizó ésta con nuestros pronunciamientos y reconoció personalidad jurídica al consejo de titulares. Véase el Informe de la Comisión de Desarrollo Urbano y Vivienda sobre el P. del C. 1425 de 3 de marzo de 2003, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria.
Sin divagaciones podemos establecer que el consejo de titulares constituye el organismo rector y deliberativo del régimen de propiedad horizontal. (11) Instituye la autoridad suprema sobre la administración del inmueble para su con-servación y viabilidad. Ese organismo está constituido por todos los titulares. Art. 38 de la Ley de Condominios, 31 L.P.R.A. sec. 1293b; Arce v. Caribbean Home Const. Corp., supra, pág. 252. Sus facultades y prerrogativas están cla-ramente delimitadas en la Ley de Condominios y supedi-tados al voto de sus miembros. Es por ello que la Ley de Condominios estableció cómo se celebran las reuniones, qué constituiría el quorum para la toma de decisiones y los votos necesarios para las distintas acciones que se han de seguir.
La finalidad de ese ente jurídico consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros; o sea, el de los titulares frente a la comunidad y a terceros. Es en este sentido que la Ley de Condominios le reconoce personalidad jurídica al consejo de titulares para promover y facilitar la participación de sus integrantes en los asuntos de conservación, administración y representación del régimen. Al así hacerlo, el Art. 38 de la Ley de Condominios, supra, diáfanamente dispone que los titulares responderán, a las obligaciones del consejo de titulares, de forma subsidiaria y solamente con su apartamento.
*853 La conceptualización de la personalidad jurídica del consejo de titulares respondió a la necesidad de que los integrantes de la propiedad horizontal contaran con un or-ganismo dotado de la facultad necesaria para actuar en beneficio de éstos. Además, éste contribuye a propiciar el régimen sin que estos tengan la preocupación de que sus actuaciones les conlleven la imposición de responsabilidad frente a terceros.
El patrimonio del consejo de titulares está limitado por la Ley de Condominios. Este consiste en los ingresos en concepto de las cuotas de mantenimiento, los recaudos por el arrendamiento de los elementos comunes, la propiedad que pueda adquirir con esos fondos y aquella que se adquiera por ejecución en cobro de las deudas de mantenimiento u otras garantías. Godreau, supra, pág. 483. No obstante, éstos son elementos siempre procomunales, es decir, a nombre de todos los titulares que componen la horizontalidad. Véase Art. 11-A de la Ley de Condominios, supra.
De lo reseñado podemos colegir que el consejo de titulares tiene un deber de fiducia frente a sus integrantes y que su conducta debe responder al fin último de la Ley de Condominios de “viabilizar la propiedad particular y privada del apartamiento”. Godreau, supra, pág. 158. Hemos recalcado la importancia de la Ley de Condominios y la política pública enmarcada en ésta. Establecimos que este régimen es especial, porque no responde ni puede ser comparado con otras figuras jurídicas reconocidas en nuestro Derecho. Su característica principal está contemplada en la armonía del disfrute de la propiedad privativa y el aprovechamiento del uso y disfrute compartido de ciertos elementos comunes en posesión de todos sus integrantes. Las características de los elementos que componen el régimen son mutables ante el consentimiento unánime de todos los titulares.
*854 Asimismo, destacamos que la horizontalidad está total-mente delimitada por la escritura pública inscrita en el Registro de la Propiedad que demarca y rige el uso y des-tino de los componentes del régimen. Igualmente, acentua-mos que la escritura matriz obliga a todo adquiriente de un bien inmueble que forme parte de esa propiedad horizontal, a la vez que reconocimos que su carácter responde a la necesidad de todos sus propietarios, por lo que no es inmu-table ante la anuencia unánime de todos ellos. De igual forma, establecimos que la totalidad de los integrantes del régimen forman el consejo de titulares al cual se le reco-noce una personalidad jurídica en la esfera de sus objetivos los cuales están consignados en la ley especial. Ese cuerpo está obligado a desempeñarse en beneficio de sus miembros.
IV
Con el marco normativo expuesto, nos corresponde con-testar la interrogante de si puede darse la prescripción ad-quisitiva o usucapión en propiedad adscrita a la Ley de Condominios.
El tema de la prescripción adquisitiva en la propiedad horizontal no ha sido ajeno a los pronunciamientos de este Tribunal. A poco examinamos nuestra jurisprudencia, nos percatamos de que hemos adelantado la posibilidad de es-cudriñar si procede la usucapión en el régimen. A estos efectos, en Brown III v. J.D. Cond. Playa Grande, supra, se nos invitó a mantener un esquema aprobado para el uso de unos estacionamientos de visitantes contrario a lo dis-puesto en la escritura matriz. Uno de los argumentos es-bozados consistió en que procedía sostenerse el esquema en vista de que se mantuvo en vigor durante once años. Los hechos planteaban que, por voto mayoritario, los titu-lares acordaron para unos estacionamientos de visitantes un uso distinto al designado en la escritura matriz. La con- *855 troversia fue delimitada por este Tribunal a los efectos de si tal actuación constituyó un acto de administración o trasformó el uso y destino de un elemento común general a limitado. Este Tribunal no sostuvo el acuerdo al concluir que variaba lo dispuesto expresamente en el título consti-tutivo del condominio, como el uso y destino. Por ende, de-clinamos sostener el acuerdo al concluir que el acto era nulo, ya que requería el consentimiento unánime de los titulares. En su opinión concurrente del entonces Juez Aso-ciado Señor Hernández Denton destacó correctamente que las disposiciones de la ley especial limitan el uso de un inmueble a los fines expresados en su escritura y que cual-quier cambio o alteración de éstos —sea en cuanto a su estructura física, naturaleza, titularidad o destino— re-quiere el consentimiento unánime de los condominos.
Más recientemente, en Nissen Holland v. Genthaller, 172 D.P.R. 503 (2007), este Tribunal atendió una controversia con relación a si se podía usucapir unos estacionamientos que formaban parte de un régimen de horizontalidad. De nuestros pronunciamientos surge que no hemos descartado la posibilidad de la adquisición por usucapión en la horizontalidad. En aquella ocasión, establecimos que no podía dirimirse por sentencia sumaria la naturaleza de los estacionamientos, por lo que existía controversia si constituían una servidumbre predial discontinua no sujeta a adquirirse por usucapión. Art. 475 del Código Civil, 31 L.P.R.A. sec. 1653. El fundamento consistió en que “la usucapión sólo puede recaer sobre cosas susceptibles de ser adquiridas mediante usucapión. De no serlas, no podrá consumarse la usucapión sobre ellas, independientemente de que se cumpla con los demás requisitos dispuestos en la ley”. Nissen Holland v. Genthaller, supra, pág. 516. En consecuencia, remitimos el caso al Tribunal de Primera Instancia para que dilucidara si el bien que habría de ser adquirido era objeto de usucapión.
*856 Como corolario de lo anterior, este Tribunal ha conside-rado la posibilidad de la usucapión en el régimen de pro-piedad horizontal, sin emitir un pronunciamiento defini-tivo al respecto y sin expresar hasta qué grado y cuándo puede ésta sostenerse. No obstante, hemos resuelto consis-tentemente que la variación del uso y destino del objeto del régimen de propiedad horizontal está supeditado al con-sentimiento unánime de todos los titulares y a la impor-tancia de las delimitaciones contenidas en la escritura ma-triz que lo constituyó.
En virtud de lo anterior, concluimos que en algunas ins-tancias la prescripción adquisitiva puede tener lugar en el régimen de propiedad horizontal. Procedemos a establecer en cuáles circunstancias procede la usucapión en el régimen. Veamos.
La ley especial conjuntamente con la escritura matriz y los planos presentados ante el Registro de la Propiedad delimitan las circunstancias en las cuales puede tener lu-gar la prescripción adquisitiva. Los integrantes de un régi-men constituido de acuerdo con la Ley de Condominios es-tán impedidos por la ley especial y la escritura matriz de usucapir los elementos comunes necesarios. Como exami-namos, la propia Ley de Condominios dispone en su Art. 11, supra, que la titularidad, posesión o control de éstos por una persona distinta al Consejo de Titulares es nula. Por lo tanto, la Ley de Condominios impide la obtención por usucapión de los elementos comunes necesarios al dis-poner claramente que estos no son sujetos de posesión. Por ende, no habrá prescripción adquisitiva con relación a los elementos comunes necesarios.
En cuanto a los elementos comunes generales, estable-cimos que éstos están delimitados en la escritura matriz y en los planos. Asimismo, hemos reconocido que la Ley de Condominios requiere que el uso y destino de éstos se fije al constituir el referido sistema y que únicamente puede ser variado por el consentimiento unánime de todos los *857 titulares. Ante tal realidad, hemos manifestado que la pro-piedad horizontal responde a un sistema catastral con rela-ción a su constitución, la designación de áreas y las caracte-rísticas de los elementos comunes. La ley especial y la escritura matriz obligan a los adquirientes de propiedades en el régimen, por lo que estos se someten a lo establecido en ellas y al así hacerlo reconocen que todos tienen el dere-cho de uso y disfrute de los elementos comunes generales.
Es ineludible que los elementos comunes generales, por disposición expresa del Art. 11 de la Ley de Condominios, supra, requieren que su adjudicación esté dispuesta en la escritura de constitución, además, para su conversión o transferencia, luego de fundado el régimen, se “requerirá el consentimiento unánime de los titulares” y la transfe-rencia deberá “inscribirse en el Registro de la Propiedad”. Ello restringe la figura de la prescripción adquisitiva en la horizontalidad en la medida que deniega la protección po-sesoria ante el interés de una garantía jurídica preferente: el propio régimen.
No puede proclamarse la titularidad privativa de un elemento común sin que ello conlleve un cambio en el des-tino y uso de éste el cual demanda el consentimiento uná-nime de todos sus dueños. Por ende, la adquisición del ele-mento común general siempre estará atada al destino y uso dispuesto en la escritura matriz, el cual exclusiva-mente puede ser alterado en respuesta a la unanimidad de todos los integrantes del sistema.(12) Por lo tanto, y en es-tricto sentido jurídico, tampoco puede hablarse de la usu-capión con relación a los elementos comunes generales de- *858 bido a que no puede variarse el uso a uno privativo, sin el consenso unánime de todos los miembros del condominio.
Ahora bien, con relación a las unidades privativas que integran el conjunto, no albergamos duda de que estas pueden ser objeto de prescripción adquisitiva por los titu-lares que conforman el régimen o algún tercero si cumplen todos los requisitos necesarios para ello. Así lo reconoce el Art. 4 de la Ley de Condominios, supra, al disponer que las fincas independientes pueden ser objeto de dominio y po-sesión y de toda clase de actos jurídicos con libertad total del resto del inmueble. Claro está, ello no podrá afectar el destino o la naturaleza privativa del bien ya que, como hemos examinado, ello siempre estará subordinado al con-sentimiento unánime de todos los condominos.
Resolvemos que la Ley de Condominios veta la adquisición por usucapión de los elementos comunes, sean necesarios o generales, pero avala la obtención por prescripción adquisitiva de los apartamentos o las fincas privativas que configuran el régimen de propiedad horizontal.
V
Pasemos a dirimir si el Consejo de Titulares puede usu-capir parte del apartamento de los esposos Bravman-González, inscrito como privativo en el Registro de la Propiedad.
En el caso ante nuestra consideración, los esposos Bra-vman-González adquirieron el apartamento 1-G del Con-dominio Palma Real adscrito a un régimen de propiedad horizontal desde 1968. La descripción registral del aparta-mento incluye un armario que el Consejo de Titulares ha utilizado por más de treinta años para colocar contadores eléctricos que suplen energía a los apartamentos 1-H, 1-J, 1-K, 2-F, 2-G, 2-H, 2-1, 2-J y 2-K. Una vez los esposos Bra-vman-González se percataron de que parte de su armario era utilizado para los fines expuestos presentaron la co- *859 rrespondiente demanda y reclamaron la titularidad de la porción ocupada por el consejo de titulares.
El consejo de titulares adujo que había adquirido el ar-mario por prescripción adquisitiva, por lo que era dueño de esa porción del apartamento 1-G. Luego, las partes inten-taron estipular que el consejo de titulares entregaría la posesión de un área del armario del apartamento a los es-posos Bravman-González y costearían la segregación. Sin embargo, la estipulación no fue ratificada en asamblea convocada a tales fines.
Como corolario de lo anterior, tanto el Tribunal de Pri-mera Instancia como el Tribunal de Apelaciones concluye-ron que el consejo de titulares cumplió con todos los requi-sitos de la prescripción adquisitiva extraordinaria y que ello no contraviene la Ley de Condominios, por lo que coli-gieron que el consejo de titulares adquirió el dominio del armario en disputa.
En desacuerdo con las actuaciones de los foros aludidos, los esposos Bravman-González acudieron ante este Tribunal. En síntesis, argüyeron que el consejo de titulares no pudo haber usucapido el armario en controversia, ya que la Ley de Condominios no permite alterar el uso y destino dispuesto en una escritura matriz sin el consenti-miento unánime de los titulares. Así, argumentaron que el consejo de titulares varió el destino del armario de priva-tivo a comunal sin cumplir con los requisitos estatuidos para ello.
Como hemos discutido, el uso y destino de los bienes que conforman la propiedad horizontal están claramente definidos en la escritura matriz y constan delimitados en los planos que se presenta con ésta. La Ley de Condominios claramente exige, y este Tribunal reiteradamente ha manifestado, que la modificación o cambio en el uso o destino establecido en la escritura matriz exige el consentimiento unánime de los titulares. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291. Además, hemos resuelto *860 que debido a la naturaleza del régimen de propiedad horizontal, el Registro de la Propiedad es garantizador de la cabida física en ese régimen. Soc. de Gananciales v. Srio. de Justicia, supra; García Larrinua v. Lichtig, supra. De otra parte, la Ley de Condominios dispone que la segrega-ción o división de apartamentos para el aprovechamiento independiente que sean permitidos por la escritura matriz se requiere el consentimiento de los titulares afectados y la aprobación por la mayoría del Consejo de Titulares. Art. 32-A de la Ley de Condominios, 31 L.P.R.Á. sec. 1292j-l; Véase la opinión concurrente del entonces Juez Asociado Señor Hernández Denton en Brown III v. J.D. Cond. Playa Grande, supra.
Como vimos, la usucapión en el régimen de la propiedad horizontal puede darse contra los elementos privativos que lo componen, ya que solo éstos son susceptibles de adqui-sición por el transcurso del tiempo. Ahora bien, el Consejo de Titulares tiene como deber primordial orientar sus ac-ciones para proteger el propósito del régimen de propiedad horizontal: el disfrute de la propiedad privada sobre el apartamento.(13) De acuerdo con ese fin primordial, en 1978 en Arce v. Caribbean Home Const. Corp., supra, este Tribunal le reconoció al consejo de Titulares personalidad jurídica en el ámbito de sus finalidades. A tono con esa interpretación, el legislador finalmente suplió al Consejo de Titulares con personalidad jurídica en el 2003 al apro-bar la Ley de Condominios. Como examinamos, ese orga-nismo está compuesto por todos los miembros adscritos a la horizontalidad, por lo que existe una relación de fiducia en cuanto a sus acciones en beneficio del régimen de pro-piedad horizontal. Asimismo, sus actuaciones responden a la voluntad de sus miembros y éste opera en representa-ción y armonía con los intereses de sus integrantes. Véase Godreau, op. cit., pág. 37.
*861 Reconocer al consejo de titulares la potestad de adquirir por prescripción adquisitiva parte de los bienes privativos en el régimen de propiedad horizontal, que le corresponde proteger, atenta contra la naturaleza misma de ese ente y trastoca los cimientos de la Ley de Condominios. Un examen de la Ley de Condominios refleja claramente que la personalidad jurídica del consejo de titulares está ceñida a la administración y el mantenimiento del régimen y a los acuerdos adoptados en las asambleas debidamente convocadas y constituidas. Art. 38 de la Ley de Condominios, supra. Es por ello, como vimos, que el patrimonio del consejo de titulares es procomunal. Ese ente no posee bienes propios que no sean los reconocidos por la Ley de Condominios, tales como los que le son expresamente asignados, los ingresos en concepto de cuotas de mantenimiento, los ingresos por el arrendamiento de los elementos comunes susceptibles de aprovechamiento por toda la comunidad y la propiedad que pueda adquirir el Consejo con esos ingresos u otros fondos legítimamente obtenidos. Véanse: Art. 11-A de la Ley de Condominios, supral; Godreau, op. cit., pág. 39.
Adjudicar parte del bien inmueble a favor del consejo de titulares propende a la desconfianza de ese ente sui géne-ris con relación al carácter representativo delegado en ese organismo. No toda posesión merece protección legal. La problemática de reubicar o llegar a un acuerdo para la ubi-cación de los contadores eléctricos no es justificación para conceder una protección posesoria al consejo de titulares en claro detrimento de la Ley de Condominios. Tal actua-ción repercute nocivamente en los cimientos de nuestro ré-gimen de propiedad horizontal al avalar el cambio en la escritura matriz de la cabida, el uso y el destino de parte de un bien privativo sin el consentimiento unánime de los titulares. Además, tolera la segregación de parte de un bien privativo sin el consentimiento del titular afectado conforme requiere el Art. 32-A de la Ley de Condominios,
*862 supra, y deniega a los esposos Bravman-González la cabida física que les garantizó las constancias del Registro de la Propiedad. García Larrinua v. Lichtig, supra. Peor aún, reconoce al consejo de titulares una capacidad que no posee de adquirir un bien en carácter representativo de sus bie-nes, cuando ello no es permitido en la prescripción adquisitiva. Véanse: Sánchez González v. Registrador, supra, pág. 375; Dávila v. Córdova, supra, pág. 141. Todo lo anterior es en diáfana contravención a la Ley de Condominios.
Como corolario de lo expuesto, el consejo de titulares nunca adquirió el área del armario ubicado en el aparta-mento de los esposos Bravman-González.
VI
Por los fundamentos antes expresados, se revoca la sen-tencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión concurrente y disidente. El Juez Presidente Señor Hernández Denton emitió una opinión disidente, a la cual se unió la Jueza Asociada Señora Pabón Charneco.

 La estipulación incluía los planos anejados con los cambios propuestos.

 X Diario de Sesiones de la Asamblea Legislativa (Cámara) pág. 1574 (1958). Posterior a ello, esa pieza legislativa fue modificada en varias ocasiones con una última enmienda materializada por la Ley de Condominios.

 La Ley Núm. 153-1995 (31 L.P.R.A. ant. sec. 1291 et seq.) enmendó la Ley de Propiedad Horizontal a los fines de agilizar los procedimientos y las decisiones de los titulares para ampliar y mejorar sus condominios y reducir los costos y gastos que conlleva conseguir el consenso unánime.

 La Ley Núm. 43-1996 (31 L.P.R.A. ant. sec. 1291 et seq.) derogó la Ley Núm. 153 y enmendó la Ley de Propiedad Horizontal a los fines de establecer una herra-mienta para el cobro de las cuotas de mantenimiento adeudadas e imponer respon-sabilidades al adquiriente involuntario sobre éstas.

 Mediante la Ley Núm. 157 de 4 de junio de 1976 (31 L.P.R.A. ant. sec. 1291 et seq.) el legislador atendió los problemas que se suscitaron con relación a la moro-sidad en el pago de cuotas de mantenimiento, el control del inmueble por el constructor o por un grupo reducido de titulares, la administración de éste cuando no se han vendido todos los apartamentos, las limitaciones al foro judicial para dilucidar querellas entre los titulares, la situación con el régimen donde existen apartamentos de uso mixto: residenciales y comerciales, y la información a compradores potenciales. Sobre el planteamiento de estos problemas, refiérase a F. Hernández Denton, Ley de Propiedad Horizontal un análisis de las enmiendas de 1976, 44 Rev. Col. Abo. P.R. 257 (1983).

 A modo de ejemplo, el caso de los coherederos.

 Originalmente, al aprobarse la Ley de Propiedad Horizontal el porcentaje de contribución era fijado a base de lo que representaba el valor del apartamento en el conjunto del inmueble. Ello se calculaba tomando como base lo que valía el aparta-mento en comparación con el valor del inmueble en total. Véase Art. 8 de la Ley de Propiedad Horizontal.

 Véase, además, el voto concurrente emitido por el entonces Juez Asociado y actual Juez Presidente, Señor Hernández Denton, sobre su preocupación a que se violen las más elementales normas de convivencia en un edificio sujeto al régimen de propiedad horizontal, ya que la Ley de Condominios requiere que la segregación o agrupación de apartamentos bajo dicho régimen deben constar consignadas en escri-tura pública, obtenerse el consentimiento de los titulares afectados y la aprobación del Consejo de Titulares. Véase, además, 31 L.P.R.A. sec. 1292j-l.

 En España existe lo que se conoce como la comunidad de titulares o la co-munidad de propietarios sin que se les reconozca una personalidad jurídica. En Argentina se refiere al consorcio de propietarios.

 La Ley de Propiedad Horizontal vigente al emitir la decisión en Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978), no dotaba al consejo de titula-res con personalidad jurídica. Para una discusión sobre este particular, refiérase a R.R. Alegría, La personalidad jurídica en la propiedad horizontal, 63 Rev. Jur. U.P.R. 875 (1996); M.J. Godreau, Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la junta de directores y del presidente para llevar acciones a nombre del condominio, 64 Rev. Jur. U.P.R. 481 (1995).

 Por disposición expresa, el consejo de titulares no puede asumir la forma corporativa o de sociedad. Art. 38 de la Ley de Condominios, 31 L.P.R.A. sec. 1293b.

 Adviértase que, con relación a los elementos comunes generales, se establece el mantenimiento de éstos en proporción a una cuota establecida, lo que puede ar-gumentarse como una interrupción civil de la usucapión por constituir un reconoci-miento tácito del derecho de los demás titulares con relación al elemento común general. Véanse: Art. 1848 del Código Civil, 31 L.P.R.A. sec. 5269; G.B. Ventura, Algunos Aspectos de la Usucapión en la Propiedad Horizontal en: http:/ / www.acaderc.org.ar/doctrina/artículos/algunos-aspectos-de-la- usucapion-en-la-propiedad (última visita 14 de septiembre de 2011).

 Véase Art. 1A de la Ley de Condominios, 31 L.P.R.A. 1291 n.